**Thomas C. KANE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WEIS MARKETS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 26, 1996.
Decided Aug. 14, 1996.
As Amended Aug. 20, 1996.

Daniel J. Gallagher, Harrisburg, for Petitioner.

Michael P. McDonald, for Respondent.

Before DOYLE and FLAHERTY, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Thomas Kane (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a decision by a Workers' Compensation Judge (WCJ) denying Claimant's petition for the reinstatement of benefits under Section 413 of the Workers' Compensation Act (Act).[1]

The relevant facts as found by the WCJ may be summarized as follows. On May 24, 1993, while working as a butcher for Weis Markets, Inc. (Employer), Claimant fell down a ramp and injured his neck, back and the right side of his abdomen. A notice of compensation payable was issued by Employer, and Claimant was paid benefits in the amount of $321.61 per week from the time of his injury. On August 30, 1993, Claimant returned to work in a light-duty capacity with no loss of earnings. Based on his return to work, Claimant subsequently signed a supplemental agreement which suspended his benefits.

Claimant worked in a light-duty capacity for Employer until February 3, 1994, at which time his employment was terminated.[2] The reasons underlying Claimant's termination are at the center of the present dispute between the parties. Claimant maintains that he was discharged without cause; conversely, Employer argues that it was justified in firing Claimant because he left work without properly notifying his supervisor.

On February 20, 1994, Claimant applied for unemployment benefits. Employer challenged this claim on the grounds that Claimant had committed willful misconduct by leaving work without properly notifying Employer, but the unemployment compensation referee assigned to the case rejected Employer's allegations as being unsupported by the facts and awarded Claimant unemployment compensation benefits. Employer did not file an appeal from the referee's award, and hence, that award became a final determination on the merits of the unemployment compensation claim. Although the WCJ in this present appeal did not accept the decision of the Unemployment Compensation Referee in its entirety, the WCJ wrote as follows:

January 1994. Despite the pain, Claimant continued to work for Employer in his light-duty position.

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

2. According to Claimant's testimony, his pain had become worse from October 1993 through

[This Judge has] reviewed the Unemployment Compensation Referee's Findings of Fact, appeal date March 15, 1994 and notes the following:

(3.) On February 2, 1994, the Claimant arrived at work but was feeling ill and telephoned his doctor[3] to report his symptoms. The doctor advised the Claimant to report to his office.

(4.) The Claimant determined that no supervisor was present at work, informed his co-worker that he was leaving work due to illness, left work and went to see his doctor.

(5.) On February 3, 1994, the Claimant's wife reported the Claimant off work due to illness.

(WCJ's Finding of Fact No. 10.) (Emphasis added.)

On February 4, 1994, Claimant reported to work, but found that his time card was missing and was informed that he should wait to talk to his supervisor. After waiting for approximately one and one-half hours without his supervisor appearing, Claimant went home where he telephoned Employer's personnel department to determine his status and was told that he would be contacted later. On February 9, 1994, Claimant was informed by Employer that his employment was terminated effective February 3, 1994.

On June 10, 1994, Claimant filed a petition for reinstatement of benefits in which he alleged that his disability continued and that he suffered a loss of earning power through no fault of his own when he was fired by Employer without just cause. Hearings were subsequently held in this matter before a WCJ on September 20 and November 22, 1994. However, Employer failed to file a timely answer to Claimant's reinstatement petition and was precluded from presenting any evidence on its own behalf. Nonetheless, the WCJ denied Claimant's reinstatement petition based upon his conclusion that "Claimant has failed to meet his burden of proof by submitting testimony accepted and found credible or believed that he is entitled to a Reinstatement of compensation." (WCJ's Conclusion of Law No. 3.)

In addition to the facts enumerated above, the WCJ specifically relied upon the following findings of fact in reaching this conclusion:

12. This Judge has reviewed all the testimony and exhibits in this matter and notes that the Claimant said he was sick, felt ill, but Claimant has not been able to connect this ill or sick felling with his work related injury of May 24, 1993. Rather, Claimant's testimony before the Unemployment Referee and this Judge, definitely shows that it was Claimant's own behavior and work performance that caused his earning power to be adversely affected.

13. This Judge questions the credibility of the Claimant and finds the Claimant not credible in his testimony regarding his work, butchering deer during the 1993–1994 hunting season as well as testimony regarding a May 1, 1993 verbal warning from Defendant.

14. This Judge finds that Claimant presented no medical evidence in support of his Petition and finds that Claimant's unsubstantiated allegations of inability to perform his job duties are not persuasive and not credible.

(WCJ's Findings of Fact Nos. 12–14.)

Claimant appealed the WCJ's decision to the Board. The Board, after reviewing the record, concluded the following:

[T]here is no specific indication … as to why [Claimant] needed to seek treatment for his injury on February 2, 1994. . . . [W]e agree with the WCJ that there is no degree of certainty as to why Claimant visited Dr. Rakosky on February 2, 1994 other than possibly to review his MRI which was taken several days prior to his visit. Furthermore, Claimant's actions of leaving his work place without reporting to anyone other than his co-worker leads us to believe that the WCJ did not deliberately disregard trustworthy evidence in concluding that Claimant's reason for loss of earning power was not related to his disability.

---

3. Claimant had previously seen his doctor, Dr. Michael A. Rakosky, on January 28, 1994. At that time, Dr. Rakosky ordered an MRI of Claimant's lower back.

(Board's Decision at 5–6.) Accordingly, the Board affirmed and Claimant then appealed to our Court.

On appeal, Claimant argues the following: (1) the WCJ and the Board erred by not applying the correct standard of proof where Claimant, who had been in a suspended status, sought a reinstatement of benefits after having his job terminated; (2) the WCJ and the Board erred by requiring him to present medical evidence showing that his disability had recurred or increased, that his termination from work was directly caused by his work-related disability, and that his reason for leaving work early on the day prior to his termination was related to his work-injury; and (3) the WCJ and the Board capriciously disregarded the unrebutted evidence in the record which demonstrated that Claimant lost his job through no fault of his own and that his disability continued.

 Initially, we note that only the Claimant submitted evidence in the present case. Therefore, we must review the decision of the WCJ using the capricious disregard standard rather than the substantial evidence standard which normally is applied where there is evidence on both sides of an issue. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988). The capricious disregard of competent evidence is "the willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one has no basis to challenge." *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Pilvalis)*, 142 Pa.Cmwlth. 400, 404–05, 597 A.2d 294, 296 (1991).

 In *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 226, 642 A.2d 1083, 1084 (1994), the Supreme Court summarized the applicable burden of proof in a reinstatement proceeding as follows:

[B]ecause of the nature of a suspension of benefits for a work-related injury, there exists a reduced burden of proof *as to causation* where a claimant petitions for reinstatement of such benefits. We held [in *Pieper v. Workmen's Compensation*

*Appeal Board (Ameteck–Thermox [Instruments Div.])*, 526 Pa. 25, 584 A.2d 301 (1990) ] that, because the claimant had already established a work-related injury supporting an award of benefits, when seeking reinstatement of those benefits causation will be presumed if the claimant can demonstrate that: (1) *through no fault of his own*, his earning power is once again adversely affected by his disability; and (2) the disability which gave rise to his original claim, in fact, continues. (Emphasis added.)

Therefore, a claimant who, while working under a suspension, is laid off because the position is eliminated, or is fired without just cause, is ordinarily entitled to a reinstatement of benefits. *USX Corp. v. Workmen's Compensation Appeal Board (Guthrie)*, 132 Pa.Cmwlth.54, 571 A.2d 1112 (1990). Furthermore, a claimant in that situation is entitled to reinstatement without having to prove through medical evidence that his loss of earning power resulted from his work-related disability. *Latta; USX Corp.* However, if it is established that the claimant was discharged for cause, then the claimant is required to establish through competent medical evidence that the work-related condition worsened so that he could no longer perform the job he had at the time of discharge. *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Workmen's Compensation Appeal Board (Pointer)*, 145 Pa. Cmwlth.539, 604 A.2d 315 (1992); *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Cochran, Sr.)*, 93 Pa. Cmwlth.175, 500 A.2d 1279 (1985).

 Applying this analysis to the present case, if Claimant was in fact fired for cause by Employer, he would have the burden of presenting medical testimony demonstrating that his medical condition had deteriorated to the point that he could no longer perform his job as a butcher. Clearly, if Employer's underlying premise that it fired Claimant for cause is correct, we would have to find that the WCJ properly denied benefits since Claimant did not present medical testimony of any kind in this case.[4]

4. In fact, a review of Claimant's reinstatement petition reveals that he does not even allege that

Unfortunately, after having thoroughly reviewed the WCJ's decision, we cannot determine from his findings whether Claimant was actually fired by Employer for cause or whether the WCJ erroneously believed that Claimant was required to produce medical testimony showing that his condition had worsened in February of 1994 regardless of the reasons underlying his termination by Employer. The WCJ specifically found that "claimant presented no medical evidence in support of his Petition." However, if Claimant had in fact been fired from his job without just cause, he would not have had to present such evidence in order to prevail.

While it is true that the WCJ found that "it was Claimant's own behavior and work performance that caused his earning power to be adversely affected" (WCJ's Finding of Fact No. 12), this finding appears to be somewhat contradicted by the WCJ's Finding of Fact No. 10 in which he seems to adopt (*i.e.*, he "notes") the unemployment referee's findings regarding Claimant's absence from work on February 2 and 3, 1994. Furthermore, the WCJ's decision appears to be based, at least in part, on his finding that

Claimant failed to connect his illness on February 2, 1994 with his prior work-related injury.[5] (*See* WCJ's Finding of Fact No. 12.)

However, Claimant was not required to do this to meet his burden. As long as Claimant had a legitimate reason to be absent from work and reasonably informed his Employer of this absence, then Employer would not have been justified in terminating Claimant's employment. **The pivotal issue in this case is whether Claimant was fired for just cause, not whether his absence from work on February 2, 1994 was connected to his work-related injury.** For example, if Claimant legitimately had been at a dentist's office because of a severe toothache, or any other emergency, he would have had just as legitimate an excuse for being absent from work as if he were being treated for his work-related injury. Therefore, if the WCJ's decision rests on some factor other rather than a lack of just cause for Claimant's absence from work, it is in error.

The WCJ also found Claimant to be "not credible in his testimony regarding his work, butchering deer during the 1993–1994 hunting season[6] as well as testimony regarding

---

his medical condition has worsened, making him physically unable to perform his job as a butcher. Of course, such an allegation would only be necessary to support the grant of a reinstatement petition if Claimant were arguing that benefits should be reinstated despite his having been discharged for just cause.

5. The possibility that the WCJ improperly based his decision on the fact that Claimant did not present any medical testimony establishing that his work-related disability had worsened in February of 1994 is supported by the following colloquy between the WCJ and Claimant's counsel:

Judge Nickel: ... I want to see some medical that something happened in February of 1994, or whenever the date is.

Mr. McDonald: Your Honor, nothing happened in February of 1994. His condition just continued to progress to the point where he was terminated. This man was working under a suspended status in light-duty, and then he was terminated. What happened was he was terminated. He was ready, willing and able to continue to work in a suspended status, in a light-duty status. There is no change of medical condition averred here.

Judge Nickel: Then we are going to have to let it go to the Supreme Court again, because as far as I am concerned, I want medical. If you don't want to give it to me, I will decide the case on that basis.

(Notes of Testimony, 11/22/94, at 10–11; Reproduced Record (R.R.) at 68a–69a.)

This last statement by the WCJ was, of course, absolute error if this was the basis of his subsequent decision.

6. On cross-examination by Employer, Claimant admitted that he had butchered deer on his days off from work during the 1993–1994 hunting season. While this admission would preclude Claimant from prevailing if the basis of his claim were that he was physically unable to work because of his work-related injury, it is not inconsistent with his entitlement to relief here since *his claim is premised on the fact that he is able to work in a light-duty capacity,* but has been prevented from doing so by Employer's unilateral and unjustified action of firing him. Therefore, if the WCJ found Claimant to lack credibility based on the mistaken belief that Claimant was alleging that he was completely unable to work due to his work-related disability, he erred. On the other hand, if the WCJ rejected Claimant's testimony based on his activities during deer hunting season, we are unable to ascertain the relevancy of such a conclusion based on the WCJ's opinion and the record as it now stands. Butchering deer in December of 1993 would have absolutely no relevancy regarding Claimant's absence from work in February of 1994.

a May 1, 1993 verbal warning from [Employer]."[7] (WCJ's Finding of Fact No. 13.) We are at a loss, however, to understand what relevancy that finding would have on the WCJ's decision regarding Claimant's actions on the dates of February 2 and 3, 1994. Furthermore, even if the WCJ found Claimant's entire testimony to lack credibility, the WCJ still had **to consider** the unemployment compensation referee's findings since he allowed that decision into the evidentiary record and reviewed and "noted" those findings, as well as a physician's Certification form signed by Dr. Rakosky.[8] Of course, the WCJ is not bound by the unemployment referee's prior determination that Claimant did not commit willful misconduct, see *Bortz v. Workmen's Compensation Appeal Board (Reznor Division of F.L. Industries)*, 656 A.2d 554 (Pa.Cmwlth.), *petition for allowance of appeal granted*, 542 Pa. 675, 668 A.2d 1137 (1995),[9] but since the WCJ "reviewed" and "noted" the findings of the unemployment compensation referee he should have either accepted them as his own findings, or reject-

ed them as he did the testimony of the claimant. This is especially true in the present case where Employer has presented no evidence to rebut the unemployment referee's findings.[10]

Section 422(a) of the Act, 77 P.S. § 834, provides as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which *clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.* The adjudicator shall specify the evidence upon which the adjudicator relies in conformity with this section. The adjudication shall provide the basis for meaningful appellate review. (Emphasis added.)

Given the apparent conflicts between the findings made by the WCJ, as discussed above, we do not believe that the WCJ's

7. The unemployment referee found that Claimant was verbally warned for leaving work early, without giving proper notice to Employer, on May 1, 1993, and informed that such conduct could result in the termination of his employment. On cross-examination before the WCJ, Claimant attempted to defend his actions on May 1, 1993 by claiming that his supervisor had been drunk. However, the WCJ did not believe Claimant's explanation of these events.

It was certainly well within the WCJ's authority, as the fact finder in this case, to disbelieve Claimant's version of this incident, or even his entire testimony. However, we feel compelled to point out that even if Claimant had in fact left work early on one occasion in 1993 in violation of Employer's own work rules, this would not have justified his termination by Employer almost a year later or have established, in and of itself, that Claimant had not acted reasonably and in accordance with Employer's policy in leaving work on February 2, 1994.

8. Contrary to the finding by the WCJ, the Physician's Certification form signed by Dr. Rakosky expressly states that Claimant was treated and under Dr. Rakosky's care on February 2, 1994. (Claimant's Exhibit No. 15; R.R. at 128a.)

9. We note that the Superior Court, in *Rue v. K-Mart Corp.*, 1996 WL 313416 (No. 2531 Philadelphia 1995, filed June 12, 1996, reargument granted, Aug. 22 1996), recently found that principles of res judicata *should be* applied to the factual findings made by an unemployment compensation referee and that those findings should

be given conclusive effect in a subsequent civil trial for defamation in the court of common pleas. In *Rue*, the unemployment compensation referee determined as a matter of fact that the claimant had not stolen potato chips from her employer. The Superior Court held that this *factual finding* precluded the relitigation of that issue in a subsequent civil trial.

While ostensibly, the Superior Court's decision in *Rue* is at odds with this Court's decision in *Bortz*, the two cases may not be necessarily inconsistent or irreconcilable. In *Bortz*, we held that the prior decision of an unemployment compensation referee that a claimant had not committed willful misconduct was not binding in a subsequent proceeding under the Workers' Compensation Act because both the legal issues and the burden of proof involved in those respective proceedings were different. Significantly, *Bortz* involved separate and distinct legal issues while *Rue* involved an identical factual issue which had been previously determined by the referee. Therefore, *Bortz* and *Rue* may be distinguishable.

10. We recognize that Employer was precluded from presenting testimony in this case. However, this circumstance was created by Employer's own failure to file a timely answer to Claimant's reinstatement petition, and it would be completely improper to discount the weight of the evidence presented by Claimant by speculating as to evidence, not in the record, which Employer would have presented if it had been allowed to do so.

decision meets the "reasoned decision" requirement of Section 422(a) of the Act. Therefore, we feel compelled to vacate the decisions of the WCJ and the Board, and remand this case back to the Board for further proceedings. The Board may conduct its own review under Sections 423 and 424 of the Act, 77 P.S. §§ 853–854, including the making of new findings of fact and conclusions of law; or, in the alternative, the Board may remand the case back to the WCJ in order to clarify the findings of fact previously made, make new findings of fact as is deemed necessary, and arrive at new conclusions of law based on the correct legal standard as enunciated in this opinion.[11]

Accordingly, the order of the Board is vacated, and the case is remanded to the Board, for further proceedings consistent with this opinion.

### ORDER

NOW, August 14, 1996, the order of the Workmen's Compensation Appeal Board (Board) in the above-captioned matter is hereby vacated, and the case is remanded so that the Board may make new findings of fact and conclusions of law pursuant to Sections 423 and 424 of the Workers' Compensation Act, 77 P.S. §§ 853–854; or, if the Board chooses not to exercise its fact finding powers under Sections 423 and 424 of the Act, it is directed to remand the case to the Workers' Compensation Judge so that he may issue a new decision. If the Board remands the case to the Workers' Compensation Judge, in rendering his decision, he shall clarify his previous findings of fact, and where necessary, make new findings of fact and conclusions of law in accordance with the foregoing opinion of this Court.

Jurisdiction relinquished.

11. Specifically, the WCJ must make a finding regarding whether Claimant's termination by Employer was for just cause. The WCJ is, of course, not precluded from finding that Employer had just cause, but we emphasize that such a finding would be reviewed under the capricious disregard standard. *See Bortz. But see Rue* (discussed *supra* note 9). Under that standard, the WCJ would have to explain why he disbelieves Claimant's own testimony on this question, and also why he rejects the findings of the unemployment referee and the Certification (Medical Report) from Dr. Rakosky, all of which support a finding that Claimant's absence from work was reasonable.