**Michael CHAMPION, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GLASGOW, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 28, 2000.

Decided June 6, 2000.

Ralph David Samuel, Philadelphia, for petitioner.

Jeffrey A. Cohen, Philadelphia, for respondent.

Before COLINS, J., McGINLEY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge. [1]

Claimant Michael Champion petitions for review of the October 7, 1999 order of the Workers' Compensation Appeal Board (Board) that: (1) reversed the decision of the workers' compensation judge (WCJ) granting Claimant's reinstatement petition, and (2) affirmed the WCJ's decision denying Employer Glasgow, Inc.'s two termination petitions. We reverse in part.[2]

On November 10, 1995, while working for Employer as an equipment operator, Claimant was injured when his foot became caught between the steps of a ladder and he twisted his left leg. On February 12, 1996, Employer issued a notice of compensation payable acknowledging Claimant's injury as a "meniscal tear left knee" and began paying Claimant weekly benefits in the amount of $402.00, based upon an average weekly wage of $603.00.

On May 7, 1996, Claimant returned to light-duty work and pursuant to a supplemental agreement, his weekly benefits were reduced to $51.00 per week. On November 13, 1996, Employer terminated Claimant's employment after he was involved in an altercation with his supervisor concerning Claimant's unilateral change in working hours that he made that day in order to pick up his daughter. Employer, however, continued to pay Claimant $51.00 per week in partial disability benefits.

On January 29, 1997, Claimant filed a reinstatement petition alleging that his total disability recurred on November 21, 1996. Employer filed a timely answer denying Claimant's material allegations.

On February 12, 1997, Employer filed a termination petition alleging that Claimant's disability ceased or terminated on October 23, 1996 and that Claimant was capable of returning to work without disability. Claimant filed an answer denying Employer's allegations and alleging that on October 23, 1996, Claimant returned to light-duty work with a loss in earnings and that Employer continued to pay partial disability benefits.

On June 13, 1997, Employer filed a second termination petition alleging that as of April 2, 1997, all disability related to Claimant's November 10, 1995 work injury had ceased or terminated. Claimant again filed an answer denying Employer's material allegations.

The WCJ accepted Claimant's testimony and that of his treating physician and medical expert, Dr. Pekka A. Mooar, as credible and persuasive. She found that Claimant's condition worsened after November 13, 1996 and that pursuant to Employer's policy, Claimant should not have been discharged as a result of the November 13, 1996 incident. Consequently, the WCJ granted Claimant's reinstatement petition and directed Employer to pay Claimant total disability benefits beginning November 13, 1996.

The WCJ rejected the testimony of Employer's medical witness, Dr. Richard G. Schmidt, to the extent that it conflicted with that of Dr. Mooar. As a result, the WCJ concluded that Employer had failed to prove that Claimant's work-related disability had ceased and, therefore, denied Employer's two termination petitions.

---

1. This case was reassigned to the author on April 11, 2000.

2. We note that although the Board's order also affirms the WCJ's decision denying Employer's termination petitions, Claimant is only appealing that order to the extent that it reversed the WCJ's decision granting Claimant's reinstatement petition.

The Board affirmed the WCJ's denial of the termination petitions but reversed the WCJ's grant of Claimant's reinstatement petition. Citing the Supreme Court's decision in *Hertz–Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers)*, 546 Pa. 257, 684 A.2d 547 (1996) (no need for a showing of fault in order to suspend a claimant's benefits upon discharge), the Board reasoned that it was not the WCJ's job to determine whether Claimant was at fault for his discharge, but rather whether Employer had cause to terminate him.

Claimant appealed to this Court. On review, this Court is limited to a determination of whether the necessary findings of fact are supported by substantial evidence, whether errors of law have been committed or whether constitutional rights have been violated. *Sears, Roebuck & Co. v. Workers' Compensation Appeal Board (Lear)*, 707 A.2d 618 (Pa.Cmwlth.1998).

Initially, this Court notes that a claimant seeking reinstatement of benefits following a suspension must establish that through no fault of his own, his earning power is again adversely affected by the work-related disability and the disability which gave rise to the original claim continues. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994). In the instant case, the WCJ accepted as credible the testimony of Claimant's treating physician, Dr. Mooar, that Claimant's work-related knee injury still prevents him for returning to his pre-injury job where he operated heavy equipment and that due to loss of cartilage, Claimant's condition is not going to improve. Finding of Fact No. 8; Mooar Deposition, pp. 26–27; R.R. 105–106. As indicated by Dr. Mooar's testimony, Claimant has established that the disability that gave rise to his original claim continues. As such, to be entitled to a reinstatement, Claimant need only establish that through no fault of his of own that his earning power is once again adversely affected. *Latta*.

Claimant's first argument is that the Board erred by usurping the WCJ's authority to make a factual finding that the testimony of Employer's witnesses lacked sufficient credibility to show that Claimant was terminated for cause. Claimant contends that the WCJ had the authority, as the sole arbiter of credibility, to disbelieve Employer's witnesses and find that Employer did not discharge Claimant for any of the reasons stated, i.e., insubordination, foul language and changing hours without permission. Therefore, Claimant contends that the Board erred in second-guessing the WCJ's credibility determinations.

Recently, in *Vista Int'l Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 29, 742 A.2d 649, 658 (1999), the Supreme Court addressed the issue of whether a partially disabled claimant, who is subsequently discharged from employment, is eligible for a reinstatement of total disability benefits. The Court stated:

> [W]e hold that a claimant who has established a partial disability due to a work-related injury should generally continue to receive partial disability benefits by virtue of his loss in earnings capacity, even though subsequently discharged from employment, because the loss in earnings capacity remains extant. Whether the same claimant may receive total disability benefits depends upon whether the employer can demonstrate that suitable work was available or would have been available but for circumstances which merit allocation of the consequences of the discharge to the claimant, such as claimant's lack of good faith.

In *Vista Int'l Hotel*, the Supreme Court rejected the employer's argument that a suspension of the employee's benefits may be achieved by merely terminating the employee without any fault-related assessment:

> Treating an involuntary termination in the manner advocated by Employer fails

to take into account the fact that the claimant remains burdened with a loss of earnings capacity attending the disability and may not have available other suitable employment. Moreover, carried to its logical conclusion, the approach would require the suspension of benefits in a broad array of cases involving involuntary terminations that occur due to no fault of the claimant, for example, in circumstances involving plant closings.

*Id.* at 26–27, 742 A.2d at 657.

Rather, citing its decision in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) for the proposition that good faith of the participants has traditionally been deemed relevant in determining issues of job availability, the Supreme Court in *Vista Int'l Hotel* reasoned that the fact finder, in determining whether a partially disabled employee is entitled to total disability benefits upon termination of a light-duty job, must consider the claimant's good faith and bad faith in connection with the termination. Specifically, the Court noted:

Thus, under this approach, a partially disabled employee who, *by act of bad faith*, forfeits his employment would not be eligible for total disability benefits, as suitable employment was in fact available but for the employee's own *wrongful conduct*. Conversely, an employee who acts in *good faith* to undertake work with restrictions would not be deprived of benefits that he plainly would have received had no light duty employment been offered merely because the employer subsequently elects to terminate such employment. (Emphasis added.)

*Id.* at 28–29, 742 A.2d at 658. Hence, we interpret *Vista Int'l Hotel* as requiring a determination by the WCJ, as fact finder in the instant case, as to whether Champion was discharged for conduct evidencing a lack of good faith.

The WCJ, however, found Champion's testimony regarding the events of November 13, 1996 to be more credible than that of Employer's witnesses. Finding of Fact No. 12. Champion testified that, from time to time, other employees were allowed to leave early in order to take care of personal problems. N.T. 55–57; R.R. 55–57. He further testified that he just found out on the morning of the day before that he had to pick up his daughter on that particular day (November 13, 1996). *Id.* As a result, in order to satisfy his supervisor, Champion took it upon himself to come in an hour earlier and finish his work in time to pick up his daughter. *Id.* Based on his eight-year history of employment with Employer, Champion believed that Employer was flexible with all of its employees in these type of situations and, therefore, that his leaving early on that day would not be a problem.[3] *Id.*

■ We do not believe that Claimant's conduct in the instant case is the type of "wrongful conduct" that the Supreme Court in *Vista Int'l Hotel* envisioned as sufficient to warrant forfeiture of a reinstatement of benefits to which the claimant would have otherwise been entitled.[4] As a

---

3. Similarly, regarding the use of profanity, the WCJ found credible Champion's testimony that his supervisor first shouted at him: "I'm tired of you F'in guys." Champion then shouted back: "You don't give a 'F' about me or my kids." N.T. 31; R.R. 31. Champion then testified that it was the only thing that he said. Champion's supervisor was the first to use profanity in addressing Champion, who merely directed the same word back to his supervisor. Therefore, we do not believe that Champion's termination can be justified on the ground that he used profanity.

4. Having determined, in view of *Vista Int'l Hotel*, that under the circumstances of this case, the Board erred in ruling that Claimant's reinstatement petition should have been denied on the ground that Claimant was terminated for cause, the Court need not address Claimant's remaining contentions that the Board erred in holding that Claimant was required to produce medical testimony, and that Claimant's medical testimony was insufficient to prove that his condition had worsened.

result, Claimant should not be denied reinstatement of total disability benefits due to his termination where, he believed in good faith, based upon past experiences of other employees, that Employer would have no problem with him coming in an hour early and leaving an hour early on one day to pick up his daughter.

In view of the foregoing, this Court concludes that the WCJ's decision granting Claimant's reinstatement petition should be affirmed on the ground that the WCJ determined in Finding of Fact No. 12 that Claimant's actions on November 13, 1996 were taken in good faith and did not provide Employer with sufficient cause to terminate Claimant. Therefore, Claimant is entitled to a reinstatement of total disability benefits. *Vista Int'l Hotel.*

For the foregoing reasons, the order of the Board is reversed in part.

### ORDER

AND NOW, this 6th day of June, 2000, for the reasons set forth in the foregoing opinion, the October 7, 1999 order of the Workers' Compensation Appeal Board is reversed in part.

COLINS, Judge, dissenting.

I respectfully dissent. In the context of a reinstatement petition, where a partially disabled claimant has been laid off or discharged from his employment and is now seeking a reinstatement of total disability benefits, the claimant's burden is to show that his condition has worsened such that he can no longer perform the light-duty work to which he was assigned before he was discharged. *Barnett v. Workers' Compensation Appeal Board (Paul Riggle & Sons)*, 718 A.2d 901 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,*

559 Pa. 680, 739 A.2d 544 (1999); *Kane v. Workmen's Compensation Appeal Board (Weis Markets, Inc.)*, 682 A.2d 17 (Pa. Cmwlth.1996). "In work[ers'] compensation reinstatement proceedings, benefits are reinstated or denied based solely on the status of the work-related injury." *Bortz v. Workers' Compensation Appeal Board (Reznor Division of FL Industries)*, 546 Pa. 77, 82, 683 A.2d 259, 262 (1996); *Barnett.* The issue of the claimant's fault in the context of the discharge from employment "is not generally relevant to the initial assessment of whether the claimant's burden of establishing a loss of earnings capacity attributable to a work-related injury has been satisfied." *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649, 657 (1999).[1]

In this case, the Board, and not the judge, applied the correct burden of proof, and the Board did not err in its conclusion that Champion failed to meet his burden. As Champion argues, Dr. Maoor's credited medical testimony establishes that his condition had worsened and that it would never improve; however, Dr. Maoor never testified, either directly or impliedly, that Champion was unable to perform the duties of his light-duty position. Dr. Maoor did testify that Champion could not return to his preinjury work; he also testified on cross-examination that he encouraged Champion to look for employment that did not include high-demand activities involving his knee.

Because issues of a claimant's misconduct or fault in the context of his discharge have nothing to do with the determination of the status of his work injury, the Court need not address Champion's argument as it relates to the Board's conclusion that Champion was discharged for cause. In

---

1. "The holding of *Hertz–Penske [Truck Leasing Company v. Workmen's Compensation Appeal Board (Bowers)*, 546 Pa. 257, 684 A.2d 547 (1996),] that fault is not relevant to the initial determination of whether the claimant's loss of earnings capacity is due to a work-related injury is tempered ... by enactments and related decisions implicating competing public policy concerns[,]" such as precluding compensation for intentionally self-inflicted injuries and those caused by the claimant's violation of law. *Vista International,* 560 Pa. at 26 n. 9, 742 A.2d at 656 n. 9.

my view, the Board did not usurp the judge's credibility determination *authority* in so concluding; rather, the Board concluded that the judge abused his discretion in making determinations on the issues of fault and/or misconduct. The Board went on to find substantial evidence of record *would* *support* a finding that Champion was discharged for cause.

Accordingly, I would affirm the Board's order.