IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Cantor, : 
                  Petitioner : 
                              : 
          v. : No. 2049 C.D. 2013
                              : Submitted: July 11, 2014
Workers' Compensation Appeal : 
Board (CoActiv Capital Partners), : 
                  Respondent : 

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI       FILED: July 31, 2014

Mark Cantor (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) that denied Claimant's claim and penalty petitions under the Pennsylvania Workers' Compensation Act (Act).[1]  We affirm.

Claimant was employed by CoActiv Capital Partners (Employer) as a medical sales representative and was paid solely on commission.  For the year 2008, Employer paid Claimant gross compensation totaling $241,964.17.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4; 2501-2708.

On December 12, 2008, Employer filed a Notice of Temporary Compensation Payable (NTCP) stating that Claimant suffered a work-related injury described as "Concussion to head, tripped and fell" on November 21, 2008, and only accepted the claim for medical purposes. (Reproduced Record (R.R.) at 2). On February 17, 2009, Employer filed a Notice Stopping Temporary Compensation and a Notice of Compensation Denial (NCD) indicating in Block #4 that although an injury took place, Claimant is not disabled as a result of the injury within the meaning of the Act; and in Block #6 that because Claimant was discharged from his employment for good cause, his current loss of earnings is not due to his work-related injury.

In March 2009, Claimant filed a claim petition[2] alleging that he tripped and fell and hit his head on the wall and the ground while working for Employer. He sought full disability benefits from November 21, 2008, onward, payment for medical bills and counsel fees, as well as a penalty petition seeking penalties based on Employer's improper use of Bureau forms.

---

[2] The claimant bears the burden of establishing all of the necessary elements to support an award of compensation benefits. *Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071, 1077 (Pa. Cmwlth.), *appeal denied*, 980 A.2d 611 (Pa. 2009) (citation omitted). The claimant must prove that he sustained a work-related injury and that the injury caused his disability. *Id.* A "disability" means a loss of earning power, not a physical disability caused by a work-related injury. *Bissland v. Workmen's Compensation Appeal Board (Boyertown Auto Body Works)*, 638 A.2d 493, 495 (Pa. Cmwlth. 1994). Unless the causal connection between a work-related injury and disability is obvious, unequivocal medical testimony is required to establish that connection. *Reyes*. If the claimant's loss of earnings is the result of the work-related injury, he is entitled to compensation benefits; if not, benefits must be suspended. *Edwards v. Workers' Compensation Appeal Board (Sear's Logistic Services)*, 770 A.2d 805, 808 (Pa. Cmwlth. 2001).

At the outset of his testimony before the WCJ, Claimant cautioned that his head injury affected his ability to understand questions and to remember or recall certain events. He stated that he was employed by Employer for approximately a year-and-a-half and that his work entailed providing financing so that customers such as doctors could buy expensive medical equipment. He testified that on November 21, 2008, he tripped on the rug on his way to get coffee and hit his head into the wall and floor and lost consciousness. He stated that he was taken to Abington Hospital where he was admitted overnight and that he was discharged to the care of his neurologist, Allen Rubin, M.D. (Dr. Rubin), who had previously treated him for a head injury he sustained in a motor vehicle accident in 2001. Claimant stated that Dr. Rubin released him to return to work, but that he had headaches and dizzy spells so he tried to work from home by making himself available for telephone calls from the vendors and their customers. He stated that his prior head injury was significant and that he missed two to four weeks in 2008 due to problems related to his prior injury and that Dr. Rubin had previously requested accommodations at work including a quiet area and a work coach. (R.R. at 47-49). Claimant presented a note from Dr. Rubin dated December 1, 2008, returning him to work with the prior requested restrictions. (*Id.* at 53).

Dr. Rubin, a board certified neurologist and psychiatrist, testified that he began treating Claimant in 2004 due to his motor vehicle accident and continued to treat him after his work-related injury. He stated that he last examined Claimant prior to the November 2008 injury in October 2008, at which time Claimant had cognitive and emotional impairment, as well as somatic and physical dysfunction, but that Claimant was able to work with accommodations. He testified that his first

3

examination of Claimant after the work-related injury was on December 1, 2008, and he noted a history of additional complaints including loss of memory immediately following the incident and visual and headache problems. Dr. Rubin opined that Claimant suffered post-concussive syndrome as a result of the incident that aggravated his prior existing conditions. He stated that he allowed Claimant to return to part-time work, but ultimately removed him from work based on Claimant's complaints that he was unable to perform his work duties. He noted that he took Claimant out of work altogether in May 2008 as a result of his 2001 traumatic brain injury, and that in September 2008, he recommended that upon Claimant's return to work that Claimant have a quiet work space, flexible work hours, a work coach and that information should be introduced to Claimant in a calm and clear manner as a result of the 2001 injury.

Employer did not present any opposing medical evidence, but presented R. Timothy Evans (Evans),[3] Claimant's immediate supervisor, who described Claimant's job as selling financing through large equipment vendors in the medical industry so that sales of the equipment to doctors and medical groups could be completed. He testified that Claimant asked to be paid based solely on commission because Claimant had a lot of experience and knew how to structure the transactions to make more money. He stated that Claimant's gross pay for 2008 totaled $241,964.17, but that Employer had the right to recall commissions for bad debt. Evans testified that he was aware that Claimant had cognitive difficulties related to

---

[3] While the transcript of the hearing identifies Claimant's supervisor as Regis Timothy Adams, the WCJ and the evidence submitted at the hearing indicate that his last name is, in fact, Evans.

the 2001 accident when he was hired, but that he did not see any difficulties in Claimant's work performance other than when disciplinary actions or negative comments were made.

Evans testified that prior to the accident, Claimant received both oral and written warnings regarding his work. He offered a series of e-mails between himself and Claimant showing that Claimant was attempting to undermine his supervisory authority and placing vendors and the ultimate users in difficult positions by failing to communicate with or making misrepresentations to the customers regarding the terms of a deal. He testified that Claimant structured transactions by giving the customer a better rate or by giving the vendor a discount, thereby eliminating Employer's profits, because Claimant had maxed out on his monthly compensation under his compensation plan. Evans stated that following the injury, he instructed Claimant to stop working at home and to refrain from contacting any of Employer's clients, but that Claimant kept contacting customers and vendors. (R.R. at 157-158). He stated that Claimant's employment was ultimately terminated after Claimant admitted in a December 9th e-mail that he did, in fact, reduce Employer's profits at least once a month by lowering customer rates or giving a vendor a discount because he could not personally profit from the transaction because his commission was capped for that month. (*Id.* at 158-160).

Evans also identified documents produced on examination of Claimant's computer after his termination that showed that Claimant had financed some transactions directly with Employer's competitors going back to March 2008. He testified that Employer had the right of first refusal for all deals, and that Claimant

5

had overstepped his authority by directly placing the deals with other financial institutions. While Claimant never testified to rebut all of the foregoing allegations, he submitted a packet of e-mails rebutting this evidence of misconduct.

The WCJ denied Claimant's claim and penalty petitions. The WCJ found Claimant's testimony credible and found that "[n]otwithstanding his cautionary explanation, [Claimant] seemed quite capable of recalling dates and times, particularly concerning this incident." (WCJ 11/9/10 Decision at 2). The WCJ also found credible Dr. Rubin's unrebutted medical testimony. He also found Evans' testimony "to be credible as to the fact that Claimant had clearly violated a variety of work rules prior to November 21, 2008, although his dismissal did not take place until sometime thereafter…." *Id.* at 2-3. The WCJ denied Claimant's penalty petition because Employer did not misuse Bureau forms and acted properly by only accepting the medical claim while denying the wage loss claim, explaining that "[a] Block #4 Denial and a Medical Only Notice of Compensation Payable have been found by the Court to be indistinguishable as both establish Claimant's right to receive payment for the treatment of his work-related injury…." *Id.* at 4. The WCJ also denied compensation benefits because Employer established the affirmative defense of termination for cause, *id.* at 4,[4] and ordered that "Claimant shall remain on

---

[4] Specifically, the WCJ stated:

> [Employer] has raised an affirmative defense of termination for cause. Careful evaluation of the testimony of both Claimant and [Evans], along with numerous e-mails and other documentation leads this tribunal to conclude that Claimant engaged in a series of activities going back as far as March of 2008, when business properly belonging to [Employer] was, in fact, diverted to other financing companies for reasons known only to Claimant. Claimant's failure to

**(Footnote continued on next page…)**

6

Suspension into the indefinite future under the terms and conditions of the Act, as amended. [Employer] shall remain responsible for any and all medical treatment required by Claimant for the treatment of his November 21, 2008 injury." (*Id.* at 5). In December 2012, the Board affirmed the WCJ's decision and Claimant filed the instant appeal.[5]

## I.

In this appeal, Claimant first argues that the WCJ erred in denying the claim and penalty petitions because, while attempting to acknowledge the injury for

---

**(continued…)**

> testify in rebuttal to the testimony of [Evans], or anticipate it in his direct, only reinforces this conclusion. Claimant has argued that [Employer] failed to turn over certain written warnings, which were discussed at the June 8, 2010 hearing. Notwithstanding this failure, Claimant chose to file his brief without requesting any sort of conference or further hearing nor was any attempt made to subpoena these documents. As a result, we infer that the documentary evidence testified to by [Evans] in fact exists. Claimant further argues that there is some financial gain to be had by [Employer] in discharging Claimant. A view of the evidence leads to a contrary conclusion. Given the amount of commission paid to Claimant for the year of his termination, one can only assume that he generated a substantial amount of business and profit for [Employer]. Earnings of this magnitude are few and far between. As a result, Claimant's request for wage compensation must be denied.

(WCJ 11/9/10 Decision at 4).

[5] This Court's review of a Board order is limited to determining whether necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Reyes*, 967 A.2d at 1076 n.4.

medical treatment only, the Employer issued an NTCP and an NCD and not a medical only Notice of Compensation Payable (NCP) form which he contends is a violation of the Act. However, as this Court has explained:

> In this case, Employer, while choosing to pay for medicals only, did not file a "medical only" NCP. Instead, Employer issued an NTCP, which fully described the injury, followed by an NCD, which while contesting the claim for loss of earning power, did acknowledge and accept the injury previously described in the NTCP. … While employer could have issued a medical only NCP, the issuance of a NTCP followed by an NCD, challenging the length and extent of disability, not the injury itself, was proper under the circumstances, and ultimately served the same objective as filing a medical only NCP—accepting liability for the medical component of the work injury. As an NTCP was initially issued, there is a clear record and full description of the injury. … The procedure followed by Employer is in accord with the Act and served to put Claimant on notice of the parameters of Employer's acceptance of the work injury, thereby satisfying … the purpose of the Act….

*Armstrong v. Workers' Compensation Appeal Board (Haines & Kibblehouse, Inc.)*, 931 A.2d 827, 832 (Pa. Cmwlth. 2007) (citations and footnotes omitted). *See also Forbes Road CTC v. Workers' Compensation Appeal Board (Consla)*, 999 A.2d 627, 629 (Pa. Cmwlth.), *appeal denied*, 14 A.3d 829 (Pa. 2010). As a result, the WCJ did not err in failing to impose penalties because Employer did not violate the Act by timely issuing an NTCP and an NCD acknowledging and describing Claimant's work-related injury and only accepting liability for related medical treatment.

8

## II.

Claimant also submits that the WCJ erred in failing to award litigation costs; however, the WCJ did not err even though he was successful in having the claim petition granted but with his benefits suspended. The only contested issue before the WCJ was whether Claimant was entitled to compensation benefits, and the WCJ's order actually did grant Claimant's claim petition, but suspended his compensation benefits because he was terminated for cause and suffered no disability as a result of his accepted work-related injury.

Section 440(a) of the Act[6] allows a claimant to recover litigation costs only where he prevails on the matter at issue in whole or in part. In *Reyes*, 967 A.2d at 1079-80, we addressed whether a claimant was entitled to litigation costs where the WCJ granted the claim petition and ordered the employer to pay reasonable and necessary medical expenses related to the work injury, but denied compensation benefits because any loss of earning power was due to the claimant's misconduct and not the work-related injury. Taking the term "contested case" to mean "contested issue," we held that because the employer conceded that the claimant was injured, but the claimant failed on the contested issue of whether he was entitled to compensation

---

[6] Section 440(a) states, in relevant part:

> In any *contested case* where the insurer has contested liability in whole or in part, … the employe … in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings….

77 P.S. §996(a), *added by* the Act of February 8, 1972, P.L. 25 (emphasis added).

9

benefits, the claimant was not entitled to litigation costs. In this case, even though Claimant prevailed on the claim petition, because, like in *Reyes*, he did not prevail on the contested issue of whether his misconduct caused the loss of his earning power, the WCJ correctly found that he was not entitled to litigation costs under the Act.

## III.

Claimant next argues that the WCJ's decision was not a "reasoned decision" as required by Section 422(a) of the Act[7] because the WCJ failed to adequately identify or summarize all of the evidence that was presented in this case. Specifically, Claimant asserts that the WCJ failed to identify specific portions of Evans' testimony on cross-examination that contradicted his testimony on direct; failed to summarize the e-mails that were introduced, including those that he used

---

[7] Section 422(a) of the Act states, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

during Evans' cross-examination; and ignored his evidence that contradicted Employer's asserted reasons for his discharge.

While Section 422(a) provides that parties to a workers' compensation proceeding are entitled to a reasoned decision, it does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations.[8] *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Section 422(a) does not require the WCJ to discuss all of the evidence presented or give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003); *Dorsey*, 893 A.2d at 195 n.4. The WCJ is only required to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision. *Id.* A decision is reasoned "if it allows for adequate review by the appellate courts under applicable review standards." *Daniels*, 828 A.2d at 1052. If a witness testifies live before the WCJ, a demeanor-based assessment of that witness is sufficient for a reasoned decision. *Id.* at 1053.

In Finding of Fact #3, the WCJ set forth the relevant portions of Claimant's testimony and evidence relating to the incident surrounding his work-related injury and his condition both pre- and post-injury, and found "Claimant's

---

[8] Questions of credibility and weight of the evidence are within the province of the WCJ who is free to accept or reject the testimony of any witness in whole or in part. *Reyes*, 967 A.2d at 1076 n.3; *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). The WCJ's findings of fact will not be disturbed if they are supported by substantial, competent evidence. *Id.*

testimony, as summarized above, to be credible as I had the opportunity to view him," and that "[n]otwithstanding his cautionary explanation, he seemed quite capable of recalling dates and times, particularly concerning this incident." (WCJ 11/9/10 Decision at 2). In Finding of Fact #4, the WCJ set forth the relevant portions of Dr. Rubin's testimony relating to Claimant's condition both pre- and post-injury and found "the unrebutted medical testimony of Dr. Rubin to be credible, and adopt it as the facts in this case [because Employer] presented no opposing medical opinion." *Id.* at 3. Finally, in Finding of Fact #5, the WCJ set forth the relevant portions of Evans' testimony and evidence regarding Claimant's misconduct at work and the circumstances surrounding his discharge, and found "the testimony of [Evans] to be credible as to the fact that Claimant had clearly violated a variety of work rules prior to [the date of his work-related injury] although his dismissal did not take place until sometime thereafter. This witness also appeared before me personally, and I have had an ample opportunity to view his demeanor." *Id.*

On review, each of the WCJ's findings is amply supported by substantial evidence so they will not be disturbed on appeal. Having set forth the relevant findings and explaining the reasons that he found the foregoing findings to be credible, the WCJ has permitted appropriate appellate review and has provided a reasoned decision as required by Section 422(a). We simply will not accede to Claimant's request to parse every line of testimony or piece of evidence supporting findings contrary to those made by the WCJ.

12

**IV.**

Finally, Claimant contends that Employer did not meet its burden of proving that his disability is not due to his work-related injury and presented no evidence of any available job within his restrictions supporting the denial of compensation benefits.

As noted above, the WCJ found that Claimant was terminated for improper activities that occurred prior to his work-related injury while his termination occurred thereafter. If an employer alleges that a claimant's loss of earnings is the result of a post-injury discharge, the employer bears the burden of proving that suitable work was available or would have been available but for circumstances that merit allocation of the consequences of the discharge to the claimant such as his lack of good faith. *Reyes*, 967 A.2d at 1077 (citation omitted). Whether a claimant is terminated for conduct tantamount to bad faith is a factual determination to be made by the WCJ. *Champion v. Workers' Compensation Appeal Board (Glasgow, Inc.)*, 753 A.2d 337, 340 (Pa. Cmwlth. 2000), *appeal denied*, 771 A.2d 1288 (Pa. 2001). When pre-injury misconduct causes a claimant's employment to be terminated, the employer must prove job availability for someone with the claimant's injuries in order to avoid the payment of compensation benefits. *Reyes*.

Substantial evidence[9] demonstrates that Employer met its burden of proof in this case and the WCJ did not improperly shift the burden of proof to

---

[9] In performing a substantial evidence analysis, this Court must view the evidence in a light most favorable to the party that prevailed before the WCJ and we must draw all reasonable inferences that are deducible from the evidence in support of the WCJ's decision. *Sharkey v. Workers' Compensation Appeal Board (Federal Express)*, 786 A.2d 1035, 1038 (Pa. Cmwlth. **(Footnote continued on next page…)**

Claimant by merely noting that he failed to testify in rebuttal to Evans' testimony. Employer's evidence shows that while Claimant sent Evans an e-mail on November 21st, the day of his work-related injury, notifying Evans of a specific deal in which he increased a vendor's fee and lowered a customer's rate, thereby lowering Employer's profits, Evans immediately terminated his employment after Claimant admitted in a December 9th e-mail that he had engaged in this conduct of lowering customer rates and giving vendor discounts on multiple occasions, at least once a month, because he could not personally profit from the transactions. (R.R. at 158-160, 220, 225, 226).

Employer's evidence also shows that following the injury, Claimant was actually working from home and that he was instructed to stop working at home and to refrain from contacting any of Employer's clients, but that Claimant kept contacting customers and vendors nonetheless. (R.R. at 157-158, 221, 222, 224). The evidence also includes an e-mail sent by Employer's Human Resources Manager to Claimant prior to his discharge demonstrating that continuing work was available:

> I understand that you will be undergoing additional evaluation, but your current doctor's note states that you are able to work part time in your current state. Since I received your release note dated for 12/1/2008 there have been 7 business days that you have not come into the office. You also know that [Employer]'s policy is that all Associates work from the office; not from home. As stated

---

**(continued…)**

2001). Moreover, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record that supports a factual finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's findings of fact. *Id.*

before, if your condition requires you to stay at home I need
a doctor's note reflecting the change.

(*Id.* at 224).[10]

Based on the foregoing, it is clear that the WCJ did not err in denying
compensation benefits because Claimant's employment was terminated soon after
Employer learned of his repeated misconduct and that he actually worked and there
was continuing work available to him at that time. As a result, Claimant's loss of
earnings was due to his termination for cause and not as a result of his work-related
injury.

As this Court explained in *Reyes*, 967 A.2d at 1078:

> The fact that Claimant's misconduct occurred one day
> before he was injured is irrelevant because Employer only
> learned of the misconduct after Claimant was injured and
> acted immediately. Because Employer fired Claimant as
> soon as it learned of his misconduct, this case is not
> governed by *Brandywine* [*Mazda Suzuki v. Workers'
> Compensation Appeal Board (Asman)*, 872 A.2d 253, 257
> (Pa. Cmwlth. 2005)]. [Claimant's Supervisor] credibly
> testified that Employer would have attempted to
> accommodate any work restrictions Claimant had after the
> accident, which is all that is required under *Second Breath*

---

[10] Evans' December 8th e-mail to Claimant referencing Claimant's November 21st e-mail also demonstrates that continuing employment was available, stating, "We have not had the chance to discuss this and I want to discuss this with you first thing tomorrow when you get into the office. [Our Human Resources Manager] had told me you have clearance to work a partial week, so come to my office immediately so we can discuss this after you have cleared your return to work with [her]." (R.R. at 225).

[*v. Workers' Compensation Appeal Board (Gurski)*, 799 A.2d 892, 900 (Pa. Cmwlth. 2002)]….

*See also Harvey v. Workers' Compensation Appeal Board (Monongahela Valley Hospital)*, 983 A.2d 1254, 1261 (Pa. Cmwlth. 2009), *appeal denied*, 995 A.2d 355 (Pa. 2010) ("The difference between the relevant facts in *Brandywine* and *Reyes* rests on the time frame of when the claimants' misconduct was discovered by their employers. In *Brandywine*, the employer was aware of the alleged misconduct before the injury took place. The employer had ample opportunity to discipline the claimant for that misconduct prior to the injury, but did not do so. In contrast, in *Reyes*, the employer became aware of the misconduct only after the injury at issue. Once the employer in *Reyes* became aware of the misconduct, it acted swiftly. In this case, as in *Reyes*, Employer only learned of Claimant's misconduct after her work injury and acted swiftly and openly in addressing it….").

Accordingly, the Board's order is affirmed.

_____
DAN PELLEGRINI, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Cantor,  :
            Petitioner  :
           :
         v.  : No. 2049 C.D. 2013
           :
Workers' Compensation Appeal  :
Board (CoActiv Capital Partners),  :
            Respondent  :

# **O R D E R**

AND NOW, this 31st day of July, 2014, the order of the Workers' Compensation Appeal Board at No. A10-2066 is affirmed.

_____
DAN PELLEGRINI, President Judge