651 A.2d 1145

**HERTZ PENSKE TRUCK LEASING COMPANY, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BOWERS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 21, 1994.

Decided Nov. 30, 1994.

Reargument Denied Feb. 6, 1995.

658

Dale A. Cable and Rhonda A. Rudman, for petitioner.

Bruce T. Rosen, for respondent.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

DOYLE, Judge.

Hertz Penske Truck Leasing Company (Employer) appeals an order of the Workmen's Compensation Appeal Board which affirmed the decision of a referee denying Employer's petition to terminate the disability benefits of Larry Bowers (Claimant).

Claimant worked for Employer as a Service Manager/Supervisor of Maintenance at Employer's Rouseville facility. On December 15, 1987, during the course of his employment, Claimant sustained an injury to his back when he fell into a tank. Claimant continued to work after his injury.

The Rouseville facility was previously owned by Leaseway, but was acquired by Employer in November 1986. Claimant was retrained and continued in his position as a supervisor after the acquisition. On February 3, 1988, Employer told Claimant to resign from his position or he would be fired. Claimant signed the resignation. On March 11, 1988, nearly a month after Claimant's separation from employment, Employer issued a notice of compensation payable for the December 1987 injury.

Thereafter, Employer filed a petition to terminate Claimant's benefits on April 14, 1988, pursuant to Section 413 of the Workers' Compensation Act (Act),[1] contending that Claimant was completely recovered from the injury to his back as of March 31, 1988. Following a hearing and after receiving medical testimony, the referee concluded that Claimant could return to work, but with restrictions. Accordingly, she denied Employer's petition to terminate. However, the referee also concluded that Claimant's job would have been available to him on March 31, 1988, but for his resignation on February 3, 1988; therefore, she entered a suspension.[2] Claimant appealed to the Board which remanded the case for further findings of fact concerning the voluntariness of Claimant's resignation, based on testimony from Claimant that he resigned under duress.

On remand, the referee made the following relevant findings of fact:

> 3. The Claimant did not voluntarily resign his employment with the defendant employer on February 3, 1988. Rather, he was confronted by his superiors that day and given the option of either resigning or being fired on the spot for poor

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

2. While there may be some lingering question whether the Board may enter a suspension where only a petition for termination has been filed by an employer, *see Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Commonwealth Ct. 15, 589 A.2d 291 (1991), we are not faced with that problem here because neither party has raised that as an issue. Moreover, Employer does not argue that the referee's conclusion denying termination was in error, and, thereby, it acknowledges that Claimant *still* has a residual injury.

job performance; and at that time he signed a letter of resignation.

4. At the time he signed the letter of resignation on February 3, 1988, the Claimant had been told that if he resigned (rather than being fired) he would continue to receive full salary payments for at least a one (1) month period, would receive his accrued vacation time, would continue to be covered for hospitalization, and would be able to collect unemployment compensation. Claimant mistakenly, although in good faith, also believed that he would forfeit his retirement benefits if he was fired rather than resigning.

5. The Defendants have not alleged, and their proofs do not establish, that the Claimant's employment was terminated due to any willful misconduct or intentional violations of work rules. Rather, they felt compelled to dismiss the Claimant because he was not performing his job well enough to satisfy the high level of service which their customers expected and they felt they were in imminent danger of losing their two (2) main customers at that location if a change in management was not made quickly.

In addition to finding that Claimant's separation from employment was not voluntary, the referee also found that Employer had not presented any evidence of available work within Claimant's restrictions. Accordingly, he dismissed Employer's petition and held that Claimant was entitled to continued total disability benefits. Employer appealed to the Board which affirmed. This appeal followed.

Employer argues that the Board erred (1) in remanding the case to the referee for findings of fact concerning Claimant's separation of employment, and (2) that Claimant's benefits should have been suspended after remand because the referee found that Claimant's "resignation" was the result of poor job performance.

Employer's first argument, that the case should not have been remanded to the referee in the first instance, rests on the assertion that there were findings sufficient to conclude that a suspension was properly entered. We disagree.

■ Claimant's testimony before the first referee raised the question of the voluntariness of his resignation. On cross-examination, Claimant testified as follows:

Q. When you say [your employment] was terminated, can you explain, please?

A. Yes. I was asked to resign or I would be terminated....

. . . .

Q. Just on that point, did you sign a letter of resignation?

A. Yes, under duress.

Q. You claim under duress?

A. Yes, definitely.

(Notes of Testimony 6/18/88 at 8–9.) In spite of this uncontradicted testimony, the referee concluded that Claimant's job would have been available to him but for this resignation, even though Employer never refuted the fact that Claimant quit "under duress." This determination was critical to the fulfillment of Employer's burden of proving that work was available within Claimant's restrictions. The Board, therefore, did not err in holding that further findings were necessary to determine the circumstances of Claimant's separation. *Armco, Inc. v. Workmen's Compensation Appeal Board (Carrodus)*, 139 Pa.Commonwealth Court 326, 590 A.2d 827, *petition for allowance of appeal denied*, 529 Pa. 636, 600 A.2d 955 (1991); *Cudo v. Hallstead Foundry, Inc.*, 517 Pa. 553, 539 A.2d 792 (1988).

■ Employer next argues that Claimant's benefits should have been suspended because his employment was terminated as a result of his poor job performance, thus, relieving Employer from demonstrating that work was available within Claimant's physical restrictions. However, a claimant's poor work performance alone, without more, is simply not enough to obviate Employer's burden to demonstrate that there was work available, especially in a case such as this where Claimant was without fault.

■ An employer carries a heavy burden of proof where it seeks to terminate a claimant's benefits, and a claimant who

has been separated from employment effectively enjoys a presumption that such separation occurred through no fault of his own, even when the issue is a suspension. *See United Parcel Service v. Workmen's Compensation Appeal Board (Portanova)*, 140 Pa.Commonwealth Ct. 626, 594 A.2d 829 (1991).

An analysis of the issue in this case begins by observing that Claimant satisfactorily performed his pre-injury job as a service manager right up to the time Claimant was forced to resign under duress, on February 3, 1988.[3] Moreover, there is no dispute that even *after* Claimant was forced to resign, Employer, then filed a Notice of Compensation Payable, on March 11, 1988, and *accepted* liability for the injury with full knowledge of the circumstances of Claimant's involuntary resignation.[4] Why would Employer have accepted responsibility for compensation if it were going to assert that Claimant was at fault for losing his job or that Claimant wasn't disabled? As the Board so well articulated in its opinion:

> Mr. Bowers' circumstances are distinguishable from the fact situation set forth in *Christopher*[5] because Mr. Bowers' separation from his employment occurred *prior* to the issuance of the Notice of Compensation Payable. While the

**3.** For example, Employer's witness Jack Gallagher, one of Claimant's supervisors testified that:

Q. The evaluation report that you prepared [dated July 15, 1987], ... you recommended that Mr. Bowers remain in the present position for another year; is that not correct?
A. That's correct.
Q. Would you say that overall this was a satisfactory performance appraisal?
A. Yes. It was average. He met the requirements of the position.
Q. In at least every category?
A. Yes.

(Deposition of Jack Gallagher, January 13, 1992 at 21–22.)

**4.** It is not without significance that Employer's Petition to Terminate filed on April 14, 1988, did not request a suspension, nor a modification, but requested only a termination on the basis that all of Claimant's disability due to his work-related injury had ceased. *See Central Pennsylvania Community Action, Inc. v. Workmen's Compensation Appeal Board (Probeck)*, 103 Pa.Commonwealth Ct. 278, 520 A.2d 112 (1987).

**5.** *Christopher v. Workmen's Compensation Appeal Board (Dravo Corp.)*, 124 Pa.Commonwealth Ct. 562, 556 A.2d 544 (1989).

Defendant could certainly pursue its remedy of terminating benefits, upon a showing that Mr. Bowers' disability had ceased, we believe that the Defendant is now estopped from asserting that Mr. Bowers' benefits should be suspended as a consequence of the circumstances of his separation from employment. They are estopped, we believe, because the Defendant had effectuated Mr. Bowers' separation from employment prior to the issuance of the Notice of Compensation Payable, and, clearly with the knowledge of the circumstances of Mr. Bowers' resignation. (Emphasis in original.)

The relevant inquiry before us is not whether Claimant's separation from employment was due simply to his own inability, because his performance did not measure up to Employer's *new* standards, but rather, whether there was an element of fault on Claimant's part which removed him from the workforce. *See Wells–Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.),* 144 Pa.Commonwealth Ct. 382, 601 A.2d 879 (1992). In other words, in order to prevail, Employer was required to prove either that Claimant's termination was voluntary, or that he was dismissed by Employer for good cause.[6]

In *United Parcel Service* the only issue before the Court, one of first impression, was whether the claimant's misconduct *prior to the claimant's injury,* which caused claimant's dismissal, was sufficient cause to enter a suspension. The majority held that it was not; the dissent held that it was. But both the majority and dissent articulated the standard at the outset: whether the claimant was discharged for good cause, and terms such as "misconduct," "good cause" and "willful misconduct" were employed interchangeably. What has never been considered as a standard in any previous case is a claimant's discharge due simply to his own inability to

---

**6.** It is worth noting that dismissal for cause alone does not *automatically* preclude a claimant from receiving benefits. *See Southeastern Pennsylvania Transportation Authority (SEPTA) v. Workmen's Compensation Appeal Board (Pointer),* 145 Pa.Commonwealth Ct. 539, 604 A.2d 315 (1992).

measure up to his employer's new requirements; mere inability or ordinary negligence is not the standard imposed under Section 413 of the Act. *See Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990).

Here, the referee specifically found as fact that Claimant's resignation was not voluntary, and there is no question that Claimant had never been charged with misconduct, willful or otherwise. The referee concluded that "the termination of Claimant's employment relationship was caused by Claimant's *inability* to meet the standards set by Defendant employer and its fear that it would lose customers unless it replaced Claimant. . . ." Finding of Fact No. 4 (emphasis added). And it is unquestioned that Claimant was still partially disabled.

In affirming the referee, the Board quoted the testimony of Claimant to demonstrate the substantial evidence which supported the referee's finding:

Q. Now, did you work continuously right up to February 3rd, '88?

A. Yes, I did.

Q. And what happened on February 3rd, '88?

A. The morning of the 3rd, John Woodard, the vice president from Reading, and Chuck Perry arrived.

Q. That's the Vice President of Hertz Penske from Reading, Pennsylvania?

A. Right, John Woodard. And after giving the normal pleasantries: good morning, and all that stuff, shaking hands and that, John says, 'I'm here to let you go.' And it just about floored me. I said, 'Why?' He said, 'We no longer require your services.' I said, 'Why?' He said, 'Because Joe Lehosky of Pennzoil doesn't like you.'

. . . .

A. 'And he's not happy with your performance. And if it comes to a point of losing an account like Pennzoil or losing you, you will have to go.' And I'm still in shock. You know, I never dreamed anything like that was going to happen. It just totally wiped me out. Be-

cause I had been working from December until February, they couldn't get a replacement for me because I, you know, hurt my back, and they kept telling me, 'Do the best you can. Do the best you can. We've got all this equipment from the refinery that we have taken over.' He kept telling me, 'Just do what you can.' I did. So, anyway, back to that day, John gave me a piece of paper, which has already been entered into evidence, and it was a voluntary quit. And I told him, 'John, I don't want to quit. I've got no reason to quit. I have been working, I have been working hurt.' He said, 'That's immaterial. It's a matter between losing Pennzoil or losing you; you have to go.' He said, 'Now, if you don't sign this, you are terminated.' That's it, cut a [sic] dried. 'If you sign it, we will give you all your vacation pay, all your pay to the end of February, and pay you all the vacation time due you, and we will pay your hospitalization, as well as your vacation time, and we will honor Unemployment Compensation so that you can collect checks, and I'll give you an excellent reference if somebody were to write me, and you will receive all your retirement money that is due you, that the company has paid into the retirement plan. Naturally, you would get your retirement money.' [A]nd I told him, I said, 'I don't know if I should sign this. I would like to call my attorney.' He said, 'No.' He said, 'If you don't sign it, that's it, you're done.' And my daughter was getting married February 13th. I couldn't go on without a paycheck. And who knows, you know, whether—how or when I would be getting any money form Social Security—not Social Security; Unemployment. And then with my back injury, who knows how I could get another job. So I told John, 'I have been working for that month-and-a-half with this back injury.' **He said, 'Well, I wasn't aware of that. Nobody told me that.' He said, 'Go ahead and file your claim, we'll honor it. If you're injured on the**

**job, we will take care of you.'** Okay, fine. So I signed the paper. I didn't have any choice.

(Notes of Testimony 8/1/91 at 5–7.) (emphasis added.)

■ Thus, Claimant's employment was terminated merely because of a customer's complaint, and *that* does not relieve Employer of its burden of proving availability of suitable employment. A claimant, working to the best of his ability cannot be said to be "at fault." *See Wells–Moore* (and cases cited therein) (remanded to the referee to make findings whether Claimant was pretextually dismissed by employer for working two full-time jobs which was contrary to employer's work rule against concurrent employment); *cf. Herndon v. Unemployment Compensation Board of Review,* 115 Pa.Commonwealth Ct. 419, 540 A.2d 633 (1988) (mere incompetence or inability to perform will not preclude a claimant who works to the best of her ability from receiving unemployment compensation benefits).

*Christopher,* relied upon by Employer, is inapposite to the present case. That case does not stand for the proposition that "poor job performance" relieves the employer of the burden of proving available work. Rather it is simply one of a long line of cases holding that a claimant may be precluded from receiving worker's compensation benefits where his or her loss of earnings is due to some action or activity for which the *claimant* was at fault. The claimant in *Christopher* was not entitled to a reinstatement of his benefits because the referee found that his termination was due to "non-performance, bad attitude, and problems with expenses...." *Id.,* 124 Pa.Commonwealth Ct. at 564, 556 A.2d at 545. Christopher was, therefore, dismissed for more than his employer's mere dissatisfaction with the work performance. The facts in *Christopher* are materially different from those in the case now before us.

■ In sum, the focus of our review is whether the Claimant was somehow at fault for separating himself from the workforce, an affirmative burden of the Employer. *See, e.g., Pointer* (reinstatement petition may be denied where claimant

was discharged for violation of a work rule); *Wells–Moore; Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Cochran, Sr.),* 93 Pa.Commonwealth Ct. 175, 500 A.2d 1279 (1985) (benefits denied for the period of disability due solely to claimant's decision to resign in lieu of being fired for excessive absenteeism); [7] *Woodard v. Workmen's Compensation Appeal Board,* 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980) (a suspension of benefits was properly entered where claimant's loss of earnings was due to his dismissal for excessive absenteeism); *Workmen's Compensation Appeal Board v. John W. Galbreath & Co.,* 20 Pa.Commonwealth Ct. 283, 341 A.2d 541 (1975) (claimant's petition for reinstatement denied because his loss of earnings was due to his dismissal for excessive absenteeism). In this case, it was Employer's decision to effectively fire Claimant in order to satisfy important customers, and not misconduct on the part of Claimant. If an economic downturn and subsequent layoff does not relieve the employer from the burden to prove continuing job availability, even though that situation cannot be considered the "fault" of the employer, *Busche v. Workmen's Compensation Appeal Board (Townsend and Bottum, Inc.),* 77 Pa.Commonwealth Ct. 469, 466 A.2d 278 (1983), neither can a dissatisfied customer's complaint. And, if job availability is not shown, a claimant is entitled to a reinstatement of his disability benefits. *Smith v. Workmen's Compensation Appeal Board (Futura Industries),* 80 Pa.Commonwealth Ct. 508, 471 A.2d 1304 (1984); *Busche.*

Accordingly, we affirm the Board.

### ORDER

NOW, NOVEMBER 30, 1994, the order of Workmen's Compensation Appeal Board in the above captioned matter is hereby affirmed.

SMITH, J., concurs in the result only.

7. In *Pointer,* we overruled *Jones & Laughlin* to the extent that it suggested that the suspension burden espoused in *Pieper,* would be applied when reviewing a claimant's discharge for willful misconduct.

NEWMAN, Judge, dissenting.

I respectfully dissent. Because I believe that Hertz Penske Truck Leasing Company (Employer) was entitled to a suspension of Larry Bowers' (Claimant's) benefits as of March 31, 1988, I would reverse the part of the Board's decision reinstating Claimant's total disability benefits as of that date.

In affirming the decision of the Board, the majority states that "Claimant satisfactorily performed his pre-injury job as a service manager right up to the time Claimant was forced to resign ... on February 3, 1988." Majority Opinion at 663. I note that although the majority cites portions of the record that seemingly support this statement, the majority's version of the facts is nonetheless inconsistent with the referee's findings of fact on this point. Specifically, the referee on remand found that Claimant's separation from employment was caused by his inability to meet Employer's standards with respect to customer service and Employer's fear that it was in imminent danger of losing its two main customers unless it replaced Claimant. Referee's Decision dated July 7, 1992, Finding of Fact No. 5. Because the referee's finding is supported by substantial evidence in the record,[1] it cannot be disturbed on appeal. *Wells–Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.)*, 144 Pa.Commonwealth Ct. 382, 601 A.2d 879 (1992).

I also take issue with the majority's statement that the relevant inquiry before this court is not whether Claimant's separation from employment was due simply to his own inability, but rather whether there was an element of fault on Claimant's part, which removed him from the work force. According to the majority, to prevail, Employer was required to prove that it dismissed Claimant for good cause. Because the action before this court is a workers' compensation proceeding, and not an unemployment compensation matter, I do

1. *See* Notes of Testimony of August 1, 1991 at 5–7, 16; Notes of Testimony of January 30, 1992 at 6–8, 28; and Deposition of John A. Woodard, an area vice president for Employer, dated January 13, 1992 at 6–10.

not believe that Employer should have been held to the same standard.

The appropriate standard to be applied in determining whether a suspension of benefits should be granted is whether a claimant's loss of earning power is a result of his own actions or misconduct[2] and not the result of factors beyond his control. *Wells–Moore. See e.g. Christopher v. Workmen's Compensation Appeal Board (Dravo Corp.)*, 124 Pa.Commonwealth Ct. 562, 556 A.2d 544 (1989) (petition for reinstatement denied where claimant was discharged for non-performance, bad attitude and problems with expenses); *Woodard v. Workmen's Compensation Appeal Board*, 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980) (benefits suspended where claimant's loss of earning resulted from his discharge due to excessive absenteeism); *Workmen's Compensation Appeal Board v. John W. Galbreath & Co.*, 20 Pa.Commonwealth Ct. 283, 341 A.2d 541 (1975) (benefits denied where claimant was discharged because of excessive absenteeism and failure to report off from work).[3]

In the present action, the referee found that Claimant was capable of returning to his pre-injury position as a service manager as of March 31, 1988. The referee further found that Claimant continues to suffer residual symptoms and limitations because of his work-related injury. However, as of March 31, 1988, those limitations no longer resulted in a loss of earning power. Beginning March 31, 1988, Claimant's loss of earning power resulted from his own actions, namely, an inability to meet the standards set by Employer.

Because Claimant's loss of earning power was the result of his own actions, and not circumstances beyond his control, I believe that Employer was under no obligation to establish the availability of suitable work, and Claimant's benefits should

**2.** I disagree with the majority's position that "misconduct" may be used interchangeably with "good cause" and "willful misconduct."

**3.** *Cf. Smith v. Workmen's Compensation Appeal Board (Futura Industries)*, 80 Pa.Commonwealth Ct. 508, 471 A.2d 1304 (1984) (benefits reinstated where claimant was laid off from a modified job because of a downturn in employer's business).

have been suspended as of March 31, 1988. Accordingly, I would reverse that part of the Board's order directing Employer to reinstate Claimant's total disability benefits on March 31, 1988.

COLINS, P.J., joins.