684 A.2d 547

**HERTZ–PENSKE TRUCK LEASING COMPANY, Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BOWERS), Appellee.**

Supreme Court of Pennsylvania.

Submitted March 4, 1996.

Decided Nov. 1, 1996.

Dale A. Cable, Pittsburgh, for Hertz–Penske Truck Leasing Co.

Bruce Rosen, Philadelphia, for Larry Bowers.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

NIGRO, Justice:

This is a worker's compensation case involving a suspension of benefits under section 772 of the Pennsylvania Workmen's Compensation Act, 77 Pa.S. §§ 1 *et seq.* ("the Act") Appellee Claimant Larry Bowers ("Claimant") was employed by Appellant Employer Hertz–Penske Truck Leasing Company ("Employer") as a Service Manager–Supervisor of Maintenance. On December 15, 1987, while at work, Claimant sustained an injury to his lower back when he slipped and fell inside a tank in the shop area. After the accident, Claimant continued to work in his same position without any loss in earnings. On February 3, 1988, following customer complaints about Claimant's work performance, Employer told Claimant that he must

resign or he would be fired. As a result, Claimant resigned on February 3, 1988. On March 11, 1988, Claimant was issued a Notice of Compensation Payable for his work-related back injury, and pursuant thereto received worker's compensation benefits.

On April 14, 1988, Employer filed a petition to terminate and/or suspend benefits. Following hearings, the Worker's Compensation Judge ("WCJ") denied Employer's termination petition, and granted Employer's petition to suspend Claimant's benefits as of March 31, 1988, finding that Employer had demonstrated that Claimant was capable of returning to modified work, and that Claimant had voluntarily resigned. Claimant appealed to the Worker's Compensation Appeal Board ("WCAB"), which remanded the case for further factual findings regarding the voluntariness of Claimant's resignation. On remand, the WCJ concluded that Claimant's resignation was involuntary, and reinstated Claimant's total disability benefits as of March 31, 1988. The WCJ reasoned that since Employer had not demonstrated that Claimant was terminated for "willful misconduct" or "intentional wrongdoing," the Employer had failed to meet its burden for suspension of benefits under the Act. The WCAB affirmed.

A divided Commonwealth Court panel affirmed. *See Hertz Penske Truck Leasing Company v. Workmen's Compensation Appeal Board,* 168 Pa.Cmwlth. 657, 651 A.2d 1145 (1995). Citing section 772 of the Act, the Commonwealth Court stated that the relevant inquiry is "whether there was an element of fault on Claimant's part which removed him from the workforce." *Hertz,* 168 Pa.Cmwlth. at 664, 651 A.2d at 1148. To satisfy its burden for suspension under section 772, the Commonwealth Court found that Employer was required to prove either that Claimant's termination was voluntary or that he was dismissed by Employer for good cause or for willful misconduct. *See id.*

As noted, however, by the Dissent below, the Commonwealth Court misapplied the unemployment compensation law principle of "willful misconduct" to the setting of worker's

compensation law.[1]  Accordingly, we reverse and remand for further proceedings consistent with this Opinion.

■  This Court's scope of review in a worker's compensation case is limited to a determination of "whether there has been a constitutional violation, an error of law, or a violation of [WCAB] procedure, and whether necessary findings of fact are supported by substantial evidence." *Markle v. WCAB*, 541 Pa. 148, 151, 661 A.2d 1355, 1357 (1995).

■  Section 772 of the Act governs the suspension of worker's compensation benefits.  Section 772 provides in relevant part:

> A referee designated by the department may, at any time, modify, reinstate, *suspend,* or terminate a notice of compensation payable ... upon petition filed by either party with the department, *upon proof that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased,* or that the status of the dependant has changed....  And provided further that where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it is shown that the loss in earnings does not result from the disability due to the injury.*

77 Pa.C.S. § 772 (emphasis added).  The plain language of this section makes clear that to suspend benefits the singular focus of the inquiry is upon the claimant's work injury.  By requiring a showing of willful misconduct for a suspension of benefits under section 772, the Commonwealth Court misconstrued the plain language of that section.  Indeed, the term "willful misconduct" appears nowhere in section 772.

1.  Writing for the Dissent below, Justice Newman correctly pointed out that "because the action before this court is a workers compensation proceeding, and not an unemployment compensation matter," the Commonwealth Court Majority misapplied the correct legal standard. *See Hertz,* 168 Pa.Cmwlth. at 667, 651 A.2d at 1150.

Moreover, the plain language of section 772 is consistent with the legislative aim of the Act. It is well-settled that the legislative intent behind the Act is simply to provide compensation to employees who suffer work-related injuries. *See, e.g., Markle v. WCAB*, 541 Pa. 148, 151, 661 A.2d 1355, 1357 (1995); *Kachinski v. WCAB*, 516 Pa. 240, 246–47, 532 A.2d 374, 377 (1987). It is equally well-settled that the Act was not intended as a remedy where a claimant's "loss [in earnings] is due to factors other than such injury." *Harle v. WCAB*, 540 Pa. 482, 488, 658 A.2d 766, 769 (1995). Unlike the Pennsylvania Unemployment Compensation Act[2], the Act here contains no language whatsoever indicating that a showing of fault on the part of a claimant must be made in order to suspend that claimant's benefits.

Since the purpose of the Act is purely to compensate a claimant for his work-related injury, the dispositive element in the suspension analysis under section 772 is the status of the injury. Issues of misconduct or fault, if any, on the part of a claimant do not impact upon this determination. Accordingly, we believe that the Commonwealth Court erred by extending the fault-based concept of "willful misconduct" or "good cause" from the unemployment compensation arena into the realm of worker's compensation law.

This Court has consistently adopted the aforementioned view of the plain language of section 772 and the legislative purpose behind that section. In *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990), this Court interpreted section 772 of the Act to mean that a "suspension of [worker's compensation] benefits is supported by a finding that the earning power of the claimant is no longer affected by his disability...." *Pieper*, 526 Pa. at 31, 584 A.2d at 303. Subsequently, in *Inglis House v. WCAB*, 535 Pa. 135, 634 A.2d 592 (1993), this Court held that under section 772, an employer can suspend worker's compensation

**2.** *See* 43 Pa.C.S. § 802(e). Quite recently, in *Rossi v. Pennsylvania Unemployment Compensation Bd. of Review*, 544 Pa. 261, 676 A.2d 194 (1996), this Court discussed the concept of "willful misconduct" under the Unemployment Compensation Act.

benefits when an employee quits voluntarily because the "employee's loss of earnings was not caused by her injury, but by her voluntary decision to abandon the employment." *Inglis House,* 535 Pa. at 140, 634 A.2d at 595. Therefore, the Commonwealth Court's "willful misconduct" analysis directly conflicts with this Court's recent decisions in *Pieper* and *Inglis House,* which both made clear that the relevant inquiry is whether the claimant's loss in earnings was the result of that Claimant's work injury.[3]

██ Unfortunately, the existing record does not contain any specific findings as to why Claimant in this case suffered a loss in earnings—for injury-related reasons or for work performance problems which are unrelated to his work injury. Thus, in order to give both parties a fair opportunity to resolve this matter under the correct legal standard, this case must be remanded to the WCJ for further factual findings and conclusions of law.

For the above reasons, the Order of the Commonwealth Court is *REVERSED,* and the case is remanded to the WCJ for further proceedings consistent with this Opinion.

NEWMAN, J., did not participate in the consideration or decision of this case.

ZAPPALA, J., files a concurring and dissenting opinion in which CASTILLE, J., joins.

ZAPPALA, Justice, concurring and dissenting.

I join the majority opinion insofar as it holds that the Commonwealth Court erred in applying the concept of willful

---

3. The Commonwealth Court's "willful misconduct" analysis also directly conflicts with the line of cases from our lower courts establishing that a suspension of worker's compensation benefits is proper where a claimant is fired for reasons which are unrelated to his work injury. *See e.g., Christopher v. WCAB,* 124 Pa.Cmwlth. 562, 566, 556 A.2d 544, 546 (1989) (holding that a suspension of benefits under section 772 was permissible upon showing that claimant's employment was terminated for reasons unrelated to his work injury); *Woodard v. WCAB,* 49 Pa.Cmwlth. 558, 560, 411 A.2d 890, 891 (1980) (same); *WCAB v. John W. Galbreath & Co.,* 20 Pa.Cmwlth. 283, 285, 341 A.2d 541, 542 (1975) (same).

misconduct of a terminated employee to a claim for workers' compensation benefits. I disagree, however, with the majority's conclusion that the existing record does not contain any specific findings as to why the Claimant suffered a loss of earnings. I find that the record in this case is sufficient to establish that the Claimant was terminated from his employment because he was unable to meet the standard of performance expected by his supervisors.

The referee made the following specific findings of fact regarding the Claimant's unsatisfactory work performance in his decision dated July 7, 1992.

2. The Claimant had been employed by defendant employer's predecessor in business, Leaseway, as service manager. Hertz–Penske took over in November of 1986, and despite substantial re-training and direct instruction from his superiors the Claimant did not adjust to Hertz–Penske's operating procedures adequately so as to meet their expectations of him. After a number of warnings did not bring the desired results, it was decided that the Claimant would have to be replaced.

3. The Claimant did not voluntarily resign his employment with the defendant employer on February 3, 1988. Rather, he was confronted by his superiors that day and given the option of either resigning or being fired on the spot for poor job performance; and at that time he signed a letter of resignation.

4. At the time he signed the letter of resignation on February 3, 1988, the Claimant had been told that if he resigned (rather than being fired) he would continue to receive full salary payments for at least a one (1) month period, would receive his accrued vacation time, would continue to be covered for hospitalization, and would be able to collect unemployment compensation. Claimant mistakenly, although in good faith, also believed that he would forfeit his retirement benefits if he was fired rather than resigning.

Based upon the referee's findings, I would conclude that the Claimant's loss of earning power was not attributable to his physical injury but to his poor performance on the job. I would hold that the Claimant's benefits should have been suspended as of March 31, 1988. Accordingly, I find it unnecessary to remand this matter to the workers' compensation judge for additional findings of fact and conclusions of law.