**Andrew BRIMMER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (NORTH AMERICAN REFRACTORIES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 2, 1998.

Decided Dec. 15, 2000.

Thomas J. O'Brien, Philadelphia, for petitioner.

Mary T. Uhlig, Philadelphia, for respondent.

Before DOYLE, President Judge, KELLEY, Judge, and RODGERS, Senior Judge.

DOYLE, President Judge.

On April 15, 1999, this Court filed a previous opinion and order affirming the decision of the Workers' Compensation Appeal Board in the above-captioned matter. Thereafter, Andrew Brimmer filed an Application for Reargument, which we denied on June 25, 1999, but, at the same time, we granted reconsideration of our prior opinion and order, both of which we then withdrew. On reconsideration of our prior opinion, it appears that Brimmer is arguing that his earning power (actual wage) during the periods when he took his vacation was less than his pre-injury average weekly wage, because he was not paid anything at all during his actual vacation periods, although he did receive a lump sum vacation payment earlier that year. However, the record is devoid of any evidence as to the amount of vacation pay that Brimmer received in a lump sum, and, as it was his burden to establish the amount of his earning power, we now reaffirm our earlier opinion, which is published herewith.[1]

Andrew Brimmer (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming a decision of a Workers' Compensation Judge (WCJ) which had denied his petition to reinstate his total disability benefits.

On July 7, 1993, Claimant sustained an injury to his right knee while working for North American Refractories (Employer). On August 13, 1993, Employer executed a Notice of Compensation Payable under which Claimant received $475 per week. On September 20, 1993, Claimant returned to work with Employer in a light-duty capacity and executed a Supplemental Agreement acknowledging his return to work and providing that he would receive varied amounts of partial disability benefits based on his fluctuating post-injury

---

1. We note that, if Brimmer was arguing that Employer is not entitled to a **credit** against his partial disability benefits for an accrued entitlement (vacation pay), he would be correct. *See, e.g., Salukas v. Workmen's Compensation Appeal Board (Mack Trucks, Inc.),* 90 Pa. Cmwlth. 612, 496 A.2d 425 (1985). But, that is not Brimmer's argument, and Employer is entitled to use Brimmer's vacation pay, which Brimmer actually received, in the computation of what his "earning power" was for the vacation time which he took. Vacation pay is part of a claimant's earning power, even if it was paid at a time prior to the vacation.

wages.[2]

Pursuant to a collective bargaining agreement negotiated between the United Steelworkers of America, Local 3269, Claimant's Union, and Employer, all eligible employees[3] would receive a vacation, of varying length, based on their length of service with Employer. The procedure provided that at the beginning of each year, eligible employees would request a vacation period. Regardless of when the employee took his vacation, he would receive a lump sum payment of his vacation pay in the beginning of the year. The amount of vacation pay would be based upon a percentage of the employee's total wages for the previous year. As a result, during any time period when an employee would not be at work because of vacation, *i.e.,* during the time when the employee actually took his vacation, Employer would not pay the employee for that time. If the employee worked during his vacation period, however, he was paid for the time that he worked, and, thus, he would in effect be paid double for the time for his vacation.

Claimant in this case scheduled his vacation from May 23, 1994, to May 28, 1994, and for the days of January 28, 1994, February 22, 1994, June 17, 1994, July 29, 1994, August 12, 1994, and November 17, 1994. Accordingly, per Employer's policy, Claimant received no compensation during that time, because it had already made the lump sum vacation payment to Claimant. Employer did, however, obtain supplemental agreements from Claimant authorizing this.

On January 9, 1995, Claimant filed a reinstatement petition, alleging that

[a] reinstatement of Compensation benefits is in order as Defendant has failed to remit certain, particular compensation due and owing to me in 1994. Specifically, my disability and wage loss continued during my vacation from 5/23/94 to 5/28/94, and 1/28/94; 2/11/94; 2/22/94; 6/17/94; 7/29/94; 8/12/94; and 11/17/94, and [Employer] has failed to remit compensation in that time frame.

(Reinstatement Petition at 1.) In response, Employer filed a timely answer denying the allegations in the petition, and hearings were scheduled before a WCJ.

At the hearings, Claimant testified to the above events. Specifically, Claimant acknowledged that he had taken the above dates off as vacation and noted that physically he could perform his light-duty job at those times. In Claimant's words, he took the vacation days to relax. Claimant did acknowledge, however, that he signed Supplemental Agreements for the periods at issue. Finally, Claimant admitted receiving a lump-sum payment representing his vacation pay at the beginning of the year.

In response, Employer presented the testimony of Bill Wagner, Employer's personnel manager. He outlined Employer's policy on vacation. Specifically, he testified that Employer does not require any employee to take a vacation each year; rather it is a voluntary decision made by each employee. Vacation time is awarded based upon the length of an employee's service with Employer, and the payment

2. Claimant's light duty position included periodic overtime work. The record reveals that, during the weeks when Claimant worked overtime, his post-injury wages equaled or exceeded his pre-injury wage and, therefore, he received no disability benefits.

3. Pursuant to the terms of the Collective Bargaining Agreement, an employee would be eligible for vacation time during any calendar year if:

1. He performed work during such calendar year, (unless prevented from doing so because of sickness or bodily injury).

2. [He has] one (1) year or more of continuous service, and

3. [He has] received earnings in at least fifty percent (50%) of the pay periods in the twelve (12) month period immediately preceding July 1 of the current calendar year (unless sickness or bodily injury has prevented the employee from attaining this minimum.)

(Article XI, Section 1, Collective Bargaining Agreement.)

which an employee receives is based upon his previous years' total wages. However, pursuant to the terms of the CBA, if an employee is unable to work due to injury or illness, he still receives the same vacation time as he would have received had he worked the entire previous year.

In addition, Mr. Wagner stated that employees who elect to take vacation are not paid during the times that they are on vacation, but rather Employer makes a lump-sum payment at the beginning of the year. Mr. Wagner noted that Employer did not force Claimant to take vacation days.

On November 30, 1995, the WCJ issued a decision and order denying Claimant's reinstatement petition because Claimant failed to satisfy his burden of proof. Specifically, the WCJ concluded that Claimant's loss of earnings, for the purpose of entitlement to partial disability benefits, was due to his voluntary decision not to work during his vacation, and, on appeal, the Board affirmed this decision. This appeal by Claimant followed.

On appeal,[4] Claimant argues that he continued to experience a loss of wages during the time that he took his vacation because there was no evidence that, even if he had worked during his vacation, his earnings during that period would have been greater than or equal to his pre-injury wage. Specifically, Claimant argues that he had two different wages losses. Wage-loss "one" occurred when he returned to work at wages less than his pre-injury wage; wage-loss "two" occurred when he voluntarily removed himself from Employer's workforce during his vacation days. It is the first wage loss for which Claimant seeks partial disability benefits.

■ It is, of course, well settled that a claimant seeking to have his benefits reinstated following a suspension bears the burden of proving that: (1) through no fault of his own, his earning power has again been affected by the work-related injury; and (2) the disability that gave rise to the original claim continues. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990).

Claimant argues that the relevant inquiry is not whether he lost earnings as the result of his vacation, but rather whether his earnings during that period equaled or exceeded his pre-injury wage. Claimant asserts that his wages during the vacation periods did not, in fact, exceed his pre-injury wage, and, therefore, he was entitled to continue to receive partial disability benefits during that period.

In support of his argument, Claimant points us to two recent decisions of this Court, *Howze v. Workers' Compensation Appeal Board (General Electric Co.),* 714 A.2d 1140 (Pa.Cmwlth.1998), and *Armstrong World Industries v. Workers' Compensation Appeal Board (Evans),* 703 A.2d 90 (Pa.Cmwlth.1997). The claimant in *Howze* was receiving partial disability benefits as the result of a March 31, 1993 injury. On January 19, 1994, however, Employer terminated the claimant for threatening another employee, and Employer subsequently sought a suspension of the claimant's benefits which the WCJ granted and the Board affirmed. On appeal to this Court, however, we reversed the Board, concluding that at least some of the claimant's disability, *i.e.,* the difference between the claimant's pre-injury wage and his wage prior to his termination, was the result of his work-related injury, and Employer had failed to prove otherwise.

In *Armstrong,* we affirmed a decision of the Board which held that, although an employee voluntarily removes himself from an employer's workforce, if he demonstrates that he is still seeking employment elsewhere, he is still entitled to benefits

---

4. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 684 A.2d 673 (Pa.Cmwlth. 1996).

because he has not removed himself from the workforce completely. In *Armstrong,* the claimant credibly testified that he was attempting to find employment outside of employer's workforce.

In the present case, Claimant specifically stated that, although he was physically capable of performing his light-duty job with Employer, he did not perform it while he was on vacation and did not attempt to find other employment during that time. Accordingly, Claimant's reliance on *Armstrong* is misplaced. Similarly, Claimant's reliance on *Howze* is also misplaced, because, unlike the facts in the present appeal, although Howze experienced a greater wage loss as the result of his termination, even if Howze had not been fired, he would have continued to earn wages less than his pre-injury wage due to his injury.

■ Unlike the claimant in the *Howze* case, however, the Claimant in the present case did not establish that he experienced a wage loss that was separate and distinct from the one that occurred as the result of his voluntary decision to take time off from work for vacation. Although Claimant was not paid for the time during which he took his vacation, he had received a lump-sum payment for that time earlier in the year, and he did not demonstrate that any other loss of wages occurred. Accordingly, because Claimant failed to establish a wage loss which was *not* the result of his voluntary decision not to work, he did not carry his burden of proof, and, therefore, both the WCJ and the Board correctly denied his reinstatement petition.

Order affirmed.

### ORDER

**AND NOW,** December 15, 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.