**Osram SYLVANIA, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WILSON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 18, 2005. Decided Feb. 17, 2006.

Anthony C. Carone, Pittsburgh, for petitioner.

Jean S. Wright, New Castle, for respondent.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Osram Sylvania (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) granting the petition to reinstate compensation benefits of Brenda Wilson (Claimant), and denying Employer's petition to suspend compensation benefits, pursuant to the Pennsylvania Workers' Compensation Act (Act).[1] We reverse.

On April 30, 1998, Claimant sustained an injury to her left hand during the course and scope of her employment with Employer. Prior litigation arose concerning this injury and, during the course of the proceedings, the parties have acknowledged this injury and Claimant has received workers' compensation benefits. In addition, in the proceedings of this case, Employer and its insurance carrier have stipulated that Claimant returned to work with restrictions.

On June 24, 2002, Employer filed a petition to suspend Claimant's compensation benefits. In the petition, Employer alleged that, as of May 6, 2002, Claimant returned to work but that she refused to execute supplemental agreements. Claimant filed an answer to the petition in which she acknowledged that she had returned to work at wages less than her pre-injury wages, and denying that the suspension of compensation benefits was appropriate.

---

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

On July 1, 2002, Claimant filed a petition to reinstate compensation benefits in which she alleged that Employer would not have any available work within her medical restrictions for the period of June 27, 2002 through July 7, 2002. Employer filed an answer to the petition in which it denied the allegations raised in Claimant's petition, and averred that this period represented a mandatory plant shutdown and that it was not an appropriate situation to reinstate compensation benefits. The petitions were consolidated for disposition and hearings before the WCJ ensued.

On July 29, 2004, the WCJ issued a decision in which he made the following relevant findings of fact:

7. The issue presented in these cases has been refined to seek a determination as to whether the Claimant, who had previously returned to work for the Employer with restrictions related to her work injury, is entitled to a reinstatement of benefits during the period of an annual and mandatory shutdown.

8. The parties have acknowledged that the Employer's entire plant was shut down for the period of June 27, 2002, through and including July 7, 2002.

As evidenced by Employer's Exhibit A, by way of memo dated January 9, 2002, the Employer announced that the plant would be shut down for the period July 1, 2002, through July 5, 2002. By way of further memo dated June 4, 2002,

June 27, 2002 and June 28, 2002, were added to this shutdown period.

9. The Employer has failed to submit a copy of the actual collective bargaining agreement applicable to this Employer. However, the inter-office memo offered as part of Employer's Exhibit A contains the following language:

> The Warren labor agreement provides for the scheduling of up to ten (10) days annually as shutdown periods, and an additional four (4) day shutdown period with no pay may be scheduled by the Company with 30 days advance notice to the employees. For 2002, the company had decided to schedule five (5) days as vacation shutdown periods during times which coincide with lower levels of sales requirements by our customers. This still gives the company the right to schedule 9 more days with no pay/no point with 30 days notice if additional days are needed this year.
>
> **For 2002, employees are required to apply the *first five days* of their earned vacation to these shutdown periods.** (Emphasis in original.) [2]

This memo indicates that the Employer was to observe scheduled shutdowns for the period July 1, 2002, through July 5, 2002, and December 23, 2002, through December 25, 2002. Therefore, based upon this evidence, this Judge finds that based upon the plain language of this memo, the Claimant could have applied

---

2. It should be noted that Section 450 of the Act, *added by* the Act of June 24, 1996, P.L. 350, *as amended*, 77 P.S. § 1000.6 provides, in pertinent part:

(a) Any employer and the recognized or certified and exclusive representative if its employe may agree by collective bargaining to establish certain binding obligations and procedures relating to workers' compensation: Provided, however, That the scope of the agreement shall be limited to:

\* \* \*

(5) the creation of a light duty, modified job or return to work program;

\* \* \*

(b) Nothing contained in this section shall in any manner affect the rights of an employer or its employes in the event that the parties to a collective bargaining agreement refuse or fail to reach agreement concerning the matters referred to in clause (a)....

her vacation to either the July shutdown or the December shutdown.

10. The Employer and its [insurer] have argued that Employer should have no obligation to pay workers' compensation benefits during a period of time that the Claimant has agreed (by way of the collective bargaining agreement) either to take vacation with pay or time off without pay. This Judge finds this argument to be inconsistent with the terms and provisions of the [Act]. This Judge does not equate this mandatory shutdown to a vacation. Rather, this period where work is not available to the Claimant who remains under physical restrictions related to her work injury is equivalent to a lay-off.

Therefore, this Judge finds that this matter is controlled by the decision of the Pennsylvania Supreme Court in *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990). (See also *Bethlehem Steel Corporation v. WCAB (Laubach)*, 563 Pa. 313, 760 A.2d 378 (2000)). This Judge finds that where, as here, the Claimant returns to work with acknowledged physical restrictions and where, through no fault of her own, the Claimant's earning power is adversely affected, the Claimant is entitled to reinstatement of total disability benefits even if this adverse affect is due to a plant closing, even if temporary.

WCJ Decision at 1–3.

Based on the foregoing, the WCJ concluded that Claimant had met her burden of proof necessary to support the reinstatement of full compensation benefits for the period of June 27, 2002 through and including July 7, 2002, and that Employer had failed to meet its burden of proof necessary to support the suspension of her compensation benefits. *Id.* at 3. As a re-

sult, the WCJ issued an order granting Claimant's petition, reinstating her full compensation benefits for the closed period of June 27, 2002 through and including July 7, 2002, and denying Employer's petition. *Id.* at 3–4.

On August 16, 2004, Employer appealed the WCJ's decision to the Board. On April 28, 2005, the Board issued an opinion and order affirming the WCJ's decision. Employer then filed the instant petition for review.

■ In this appeal, the sole claim raised by Employer is that the Board erred in affirming the WCJ's decision granting Claimant's reinstatement petition as her loss of earning power during the shutdown of Employer's plant was not "through no fault of her own". Specifically, Employer asserts that as Claimant agreed under the collective bargaining agreement to take a portion of her vacation time with pay during the mandatory shutdown of its plant, from June 27, 2002 through July 7, 2002, she is not entitled to the additional award of total compensation benefits for this closed period of time. We agree.

■ It is well settled that when a claimant petitions for the reinstatement of compensation benefits following a suspension, the claimant need not reprove the causal connection between the original work-related injury and the disability which gave rise to compensation because such causation was established at the time of the original claim. *Pieper*. The claimant is required to establish that, through no fault of her own, her earning power is again adversely affected by the work-related disability and the disability which gave rise to the original claim continues. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa.

223, 642 A.2d 1083 (1994).[3] The relevant inquiry is whether the claimant's loss of earnings is the result of the work-related injury as the Act was not intended as a remedy where a claimant's loss in earnings is due to factors other than the work-related disability. *Hertz–Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers)*, 546 Pa. 257, 684 A.2d 547 (1996).

In *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (1999), the Supreme Court addressed the issue of whether a partially disabled claimant, who is subsequently discharged from employment, is eligible for a reinstatement of total disability benefits. In *Vista*, the Supreme Court held "as a general rule, where a work-related disability is established, a post-injury involuntary discharge should be considered in connection with the separate determination of job availability rather than as dispositive of loss of earnings capacity." *Id.* at 27, 742 A.2d at 657. "Under this approach, a partially disabled employee who, by act of bad faith, forfeits his employment would not be eligible for total disability benefits, as suitable employment was in fact available but for the employee's own wrongful conduct." *Id.* at 28–29, 742 A.2d at 658. "Conversely, a partially disabled employee who acts in good faith to undertake work with restrictions would not be deprived of benefits that he plainly would have received had no light duty employment been offered merely because the employer subsequently elects to terminate such employment." *Id.* at 29, 742 A.2d at 658.

▪▪▪ A claimant who establishes work-related partial disability should generally continue to receive partial disability bene-

fits because of the earnings loss, even if subsequently discharged, because the loss of earning capacity remains extant. *Id.* Whether the claimant may receive total disability benefits depends upon whether the employer can demonstrate that suitable work was or would have been available but for circumstances meriting allocation of the consequences of the discharge to the claimant, such as lack of good faith. *Id.* Thus, the fact finder, in determining whether a partially disabled employee is entitled to total disability benefits upon termination of a light-duty job, must consider the claimant's good faith and bad faith in connection with the termination. *Id.*

The certified record in the case before us fails to demonstrate that Claimant's loss of earnings during the 11–day closed period of time was the result of her work-related injury. Rather, the record reveals that any recurrence of Claimant's loss of earnings resulted from her voluntary decision, pursuant to the terms of the collective bargaining agreement, to take her vacation with pay and ***not*** from her work-related disability. *See, e.g., Brimmer v. Workers' Compensation Appeal Board (North American Refractories)*, 764 A.2d 104, 108 (Pa.Cmwlth.2000) ("[H]owever, the Claimant in the present case did not establish that he experienced a wage loss that was separate and distinct from the one that occurred as the result of his voluntary decision to take time off from work for vacation. Although Claimant was not paid for the time during which he took his vacation, he had received a lump-sum payment for that time earlier in the year, and he did not demonstrate that any other loss of wages occurred. Accordingly, because Claimant failed to establish a wage

---

**3.** As the burdened party, Claimant had to meet both her burden of production and burden of persuasion regarding the required elements. *See, e.g., Crenshaw v. Workmen's Compensation Appeal Board (Hussey Copper)*, 165 Pa.Cmwlth.696, 645 A.2d 957 (1994).

loss which was **not** the result of his voluntary decision not to work, he did not carry his burden of proof ....") (emphasis in original). We, therefore, conclude that the Board erred in affirming the WCJ's decision that Claimant sustained her burden of proving her entitlement to the reinstatement of her total compensation benefits for the relevant closed period of time.

Accordingly, the order of the Board is reversed.

### *O R D E R*

AND NOW, this 17th day of February, 2006, the order of the Workers' Compensation Appeal Board, dated April 28, 2005 at No. A04–2147, is REVERSED.