Ainsley T. **BATTLES**, Petitioner

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (PITTSBURGH
STEELERS SPORTS, INC.)**, Respon-
dent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 5, 2013.

Decided Aug. 29, 2013.

Publication Ordered Nov. 21, 2013.

Thomas C. Baumann and Sandra W. Kokal, Pittsburgh, for petitioner.

Michael D. Sherman, Pittsburgh, for respondent Pittsburgh Steelers Sports, Inc.

BEFORE: COHN JUBELIRER, Judge, LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Ainsley T. Battles (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying his claim for an injury sustained while playing professional football for Pittsburgh Steelers Sports, Inc. (Employer). In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant is not entitled to benefits because although he sustained a work injury, the injury did not result in a loss of earnings. We affirm.

Employer signed Claimant to a one-year contract for the 2004–2005 National Football League (NFL) season, to play as a defensive back and on special teams. On September 12, 2004, during the first game of the season, Claimant tore the hamstring in his left leg. Employer's team surgeon operated on September 15, 2004, and Claimant undertook a rehabilitation program with Employer's assistant athletic trainer. On June 2, 2005, Employer decided not to re-sign Claimant. Employer allowed Claimant to continue rehab with team trainers, free of charge, and gave Claimant a severance payment of $50,000. Claimant was medically cleared to play professional football on August 20, 2005, but he was not offered a spot with any team and retired from professional football in 2006. Since then, Claimant worked briefly as a personal trainer and a medical device salesman. He currently teaches social studies and coaches high school football and track in Georgia.

In August 2007, Claimant filed a claim petition seeking total disability benefits from September 12, 2004, to January 30, 2007, and partial disability benefits from January 31, 2007, and ongoing. Employer filed an answer denying the allegations. The matter was assigned to a WCJ. At the hearings, both parties appeared and presented evidence. Employer acknowledged that Claimant was injured, but it disputed Claimant's assertion of an ongoing disability.

Claimant testified in support of his claim. He explained that his hamstring injury has deprived him of the ability to compete in professional football. Specifically, Claimant believes that his ability to "run, change direction, tackle ... stop the ball carrier or use my legs to throw blocks or cover the offense," has been diminished to the point where no team will hire him. Reproduced Record at 28a (R.R. ____).

As evidence of his diminished physical ability, Claimant testified that before his injury, his 40–yard dash time was 4.6 seconds; post-injury his best time was 4.89 seconds. As evidence of his inability to find work with a professional football team, Claimant testified that he tried out for the Nashville Kats of the Arena Football League in February 2006. The tryout required him to run various drills, but he was not hired. However, he was not timed during this tryout. During this same period, Claimant's agent unsuccessfully attempted to persuade the Seattle Seahawks to sign Claimant.

Claimant submitted the deposition testimony of James Lloyd Chappuis, M.D., a board-certified orthopedic surgeon who examined Claimant on one occasion, March 12, 2008. Dr. Chappuis reviewed records showing that Claimant had sustained a complete hamstring avulsion, meaning that the hamstrings were torn from the bone. Dr. Chappuis opined that, at extremes, Claimant's leg would no longer perform the way it performed before his injury. Dr. Chappuis does not believe that Claimant can perform the duties of a defensive back in the NFL.

Employer presented the deposition testimony of James Bradley, M.D., Employer's head orthopedic surgeon for the past 19 years. Dr. Bradley examined Claimant on the day of his injury and ordered an MRI that revealed Claimant's complete hamstring avulsion. Dr. Bradley surgically repaired the injury on September 15, 2004, and Claimant's recovery and rehabilitation progressed normally. On August 30, 2005, Dr. Bradley cleared Claimant to play professional football without any medical restrictions. Dr. Bradley's determination was limited to Claimant's physical fitness, not his skill level, to play professional football.

Employer also presented the deposition testimony of Jeffrey Kann, M.D., a board-certified orthopedic surgeon who examined Claimant on August 25, 2008. During the examination, Claimant's only complaint was that his left leg became fatigued more quickly than his right leg. Based on a review of medical records and radiographic test results, Dr. Kann opined that Claimant had obtained "superb results" from his surgery. R.R. 130a. Dr. Kann opined that Claimant had fully recovered from a functional standpoint and was fit to play in the NFL without any restrictions.

Employer presented the deposition testimony of assistant athletic trainer Ryan Grove regarding Claimant's rehabilitation process. Grove began working with Claimant in mid-September 2004. The goal was for Claimant to regain his range of motion, strength and functional ability to play the defensive back position in the NFL. As part of Claimant's rehabilitation process, Grove required him to complete defensive back drills, such as the shuttle run, ladder run, single leg hop, and 40–yard dash. Grove timed Claimant's 40–yard dashes, and his best time was 4.89 seconds. Grove timed Claimant to motivate him and, thus, used only his wrist watch. By contrast, lasers are used in official NFL timing. Grove testified that his rehabilitation was successful, as evidenced by Claimant's clearance to play professional football with no restrictions in August 2005.

Employer also presented the deposition testimony of Kevin Colbert, Employer's Director of Football Operations. Colbert makes all player decisions. Colbert described Claimant's history as a player in the NFL. Employer originally signed Claimant out of college as a free agent safety for the 2000–2001 season. He performed well enough to be considered a back-up player, but Employer cut him from the squad after the season. Claimant then played for the Jacksonville Jaguars from 2001 to 2003. After he was cut by that team, he signed with the Buffalo Bills, who released him in March 2004. In June 2004, Employer signed Claimant to a one-year contract, with a spot on the active roster. He was injured in the first game. Colbert testified that Claimant was placed on the team's injured reserve list on September 13, 2004, meaning that he would miss the entire season. Employer paid Claimant $205,000, in 17 payments, corresponding to the 17 weeks of the football season. This was the contractual amount owed Claimant in the event of a season-ending injury.

Colbert testified that Employer decided not to renew Claimant's contract in June 2005 for a number of reasons. When Claimant was signed to Employer's roster in 2004, three other safeties were on the team: Troy Polamalu, Chris Hoke, and Mike Logan. Employer signed Russell Stuvaints to play in Claimant's place after he was injured. Shortly thereafter, Mike Logan was injured and replaced by Tyrone Carter. Carter had been previously injured and cut by the Minnesota Vikings when hired by Employer for the season. Employer re-signed Carter on April 5, 2005, instead of Claimant, because Carter "was a better player" with a better overall player rating. R.R. 189a. Had Carter signed with another team, Employer would have considered signing Claimant.

Colbert testified that a player's playing speed is not the determining factor in winning a spot on the team; he explained that intelligence and toughness are actually more important in a football career. Colbert testified that Employer does not time player 40–yard dash times after they've made the active roster because "it's irrelevant to [the] ability to be able to compete and help us win." R.R. 234a. Claimant's

timing on 40–yard dashes had no effect on Colbert's decision not to re-sign Claimant.

The WCJ found that Employer essentially accepted a medical-only claim by recognizing Claimant's work injury and paying all medical expenses associated with it. Further, it had paid Claimant the amount of salary owed under his one-season contract. This left the issue about the extent of Claimant's disability and whether Claimant could play professional football. The WCJ credited the medical opinions of Dr. Bradley and Dr. Kann over the contrary opinion of Dr. Chappuis, and found that after surgery and rehabilitation, Claimant had regained his physical ability to play professional football. The WCJ noted that Claimant's own testimony that he tried out for the Nashville Kats showed that he considered himself capable of playing professional football. The WCJ credited the testimony of Colbert that Claimant lost his spot because Employer had acquired a better player in Carter, not because of Claimant's injury and physical condition. Based on the foregoing, the WCJ concluded that Claimant failed to prove that his September 12, 2004, work injury resulted in any compensable period of disability. The WCJ therefore denied the claim petition.[1] Claimant appealed and the Board affirmed. Claimant now petitions this Court for review.[2]

On appeal, Claimant argues that the Board erred in denying the claim petition when the credible testimony, including that of Employer's own medical experts, established that Claimant sustained a work injury on September 12, 2004. Claimant contends that the hamstring injury left him without the skills necessary to play professional football, as evidenced by his significantly slower post-injury 40–yard dash times and by the fact that Employer did not take him back. Employer rejoins that the Board correctly affirmed the WCJ's decision because Claimant did not meet his burden of showing a compensable disability. We agree with Employer.

■ In a claim petition, the claimant has the burden of proving all elements necessary to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 141, 634 A.2d 592, 595 (1993). In order to be entitled to workers' compensation benefits, the claimant must prove both that the injury resulted in disability, and the duration of that disability. *Id.* In the context of workers' compensation benefits, the term disability is synonymous with a loss of earning power. *Scott v. Workers' Compensation Appeal Board (Jeanes Hospital)*, 732 A.2d 29, 32 n. 3 (Pa.Cmwlth.1999). Workers' compensation benefits are not intended as a remedy where the claimant's loss in earnings is attributable to factors other than the work injury. *Hertz–Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers)*, 546 Pa. 257, 261, 684 A.2d 547, 549 (1996).

■ Here, Claimant failed to prove that his work injury resulted in disability, *i.e.*, a loss of earnings. It is undisputed that Claimant missed the 2004–2005 football season because of his work injury. Further, while Claimant was undergoing reha-

---

1. Claimant also sought unreasonable contest attorney's fees and an award of penalties before the WCJ. The WCJ held in favor of Employer, and Claimant has not appealed these issues.

2. This Court's review is limited to determining whether an error of law was committed, whether findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Jordan v. Workers' Compensation Appeal Board (Philadelphia Newspapers, Inc.)*, 921 A.2d 27, 36 n. 4 (Pa. Cmwlth.2007).

bilitation, he was not cleared to play professional football. However, Claimant had no loss of earnings during this period because Employer paid Claimant what he was contractually entitled to receive for the 2004–2005 season. Claimant's contract with Employer did not renew beyond that single season.

Contrary to Claimant's contention, the testimony of Dr. Bradley and Dr. Kann does not establish a compensable disability. Both doctors agreed that Claimant's injury would not prevent him from playing professional football, and neither doctor suggested that Claimant's injury caused a loss in earning power after he completed his rehabilitation. Claimant focuses on his own perceived decline in performance, such as his slower 40–yard dash times, and the fact that no other team signed him. However, Colbert credibly testified that Claimant's 40–yard dash times were irrelevant to the decision not to re-sign Claimant. Rather, Employer had signed Carter, who was considered an overall better player. Claimant's injury did not factor into the decision. In fact, Employer would have considered re-signing Claimant if Carter had signed with a different team. Nor did Claimant present evidence that his speed was a factor in the decision of other teams not to sign him. The Nashville Kats did not time Claimant during his tryout.

In sum, the Board did not err in denying the instant claim. Claimant is not entitled to disability benefits because he failed to prove that his work injury caused him to experience a loss of earnings.

Accordingly, the Board's adjudication is affirmed.

Judge McGINLEY did not participate in the decision in this case.

### ORDER

AND NOW, this 29th day of August, 2013, the order of the Workers' Compensation Appeal Board dated February 5, 2013, in the above-captioned matter is hereby AFFIRMED.